STATE OF CONNECTICUT *v.* RONALD K. WILDES
(7780)

BORDEN, DALY and O'CONNELL, Js.

Argued October 19—decision released December 12, 1989

*Edward E. Moukawsher,* for the appellant (defendant).

*Jacqueline J. Footman,* deputy assistant state's attorney, with whom, on the brief, were *C. Robert Satti, Sr.,* state's attorney, and *Marcia Pillsbury,* deputy assistant state's attorney, for the appellee (state).

DALY, J. The defendant appeals from the judgment of conviction rendered after he had entered a conditional plea of nolo contendere, pursuant to General Statutes § 54-94a,[1] to a charge of possession of nar-

---

[1] General Statutes § 54-94a governs pleas of nolo contendere and provides: "CONDITIONAL NOLO CONTENDERE PLEA. APPEAL OF DENIAL OF MOTION TO SUPPRESS OR DISMISS. When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress evidence based on an unreasonable search or seizure, motion to suppress statements and evidence based on the involuntariness of a statement or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution."

cotics in violation of General Statutes § 21a-279 (a).[2] The sole issue on appeal is whether the trial court properly denied the defendant's motion to suppress when it concluded that the search was reasonable as a search incident to an arrest, or under the inevitable discovery doctrine.

The trial court found the following facts. On September 22, 1988, at approximately 7:20 a.m., Detective Randy Gerovitz of the Groton police department was in uniform and on duty at an entrance of the Electric Boat Division of General Dynamics Corporation because of a strike at the facility. At this time, Gerovitz stopped a vehicle operated by the defendant after observing that the registration plate appeared to have expired.

Upon stopping the defendant, whom the officer recognized as the proprietor of a local business, he learned that the registration plate was, in fact, expired and that the plate did not belong on that vehicle. A computer check on the plate verified that the plate belonged to another individual. Gerovitz then informed the defendant that he was under arrest for operating an unregistered motor vehicle in violation of General Statutes § 14-12a, an infraction, and for misuse of registration plates in violation of General Statutes § 14-147 (c), a misdemeanor.[3]

After informing the defendant that he was under arrest, Gerovitz conducted a pat-down search of the

---

[2] The defendant also pleaded guilty to operating an unregistered motor vehicle in violation of General Statutes § 14-12a. The defendant has not appealed from this conviction.

[3] General Statutes § 14-147 (c) provides: "No person shall use any motor vehicle registration or operator's license other than the one issued to him by the commissioner, except as provided in section 14-18; and no person shall use a motor vehicle registration on any motor vehicle other than that for which such registration has been issued. Any person who violates any provision of this subsection shall be fined not more than one hundred dollars or imprisoned not more than thirty days or both."

defendant's person for weapons. During the pat-down, Gerovitz discovered in the defendant's back pocket a bulky wallet, which he removed from the defendant. On the basis of his experience that individuals sometimes conceal small weapons such as razor blades and small handguns, Gerovitz opened the wallet. Noting that the wallet contained a large amount of money, Gerovitz removed the money, counted it and returned it to the defendant. He then searched the wallet for weapons. While the wallet was open, Gerovitz observed within it, in plain view, a small folded piece of paper consistent with the type that holds cocaine. Gerovitz gave the piece of paper to a detective, who had arrived to lend assistance. The detective opened the folded piece of paper and found that it contained a white substance that appeared to be cocaine. The defendant was then informed that he was being charged with possession of narcotics in violation of General Statutes § 21a-279 (a). The defendant was transported to police headquarters and later was released on a promise to appear.

The defendant filed a motion to suppress the fruits of the search relying on article first, § 7, of the Connecticut constitution. After the court denied the motion, the defendant entered a nolo contendere plea to the charge of possession of narcotics, and pleaded guilty to the charge of operating an unregistered motor vehicle. The defendant was sentenced and this appeal from the narcotics conviction ensued.

The defendant claims that, although his arrest was lawful, the scope of the search was unreasonable and violated the state constitutional standard set forth in *State* v. *Dukes,* 209 Conn. 98, 547 A.2d 10 (1988), for custodial arrests for traffic offenses. See Conn. Const., art. I, § 7.

The trial court also relied on the *State* v. *Dukes,* supra, holding when it determined that the search was

reasonable. The trial court interpreted *Dukes* to hold that where there is no claim of a pretextual traffic stop, the officer has a right to search the person of the defendant for weapons incidental to an arrest. On the basis of this understanding, the court concluded that the officer had the right to search the defendant for weapons, and that, when he felt the bulge in the defendant's pocket, he had the right to remove the items. Finally, having ascertained that it was a bulky wallet that he reasonably believed could contain a weapon, the officer had the right to open the wallet. We agree.

The concurring opinion in *Dukes,* supra, fairly summarizes the majority's holding as to the state constitutional requirements regarding searches of persons incident to lawful custodial arrests where such arrests are for traffic offenses: "Rather than endorse under our state constitution the broader holding of *Robinson* that 'in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a "reasonable" search under that Amendment'; *United States* v. *Robinson,* [414 U.S. 211, 235, 94 S. Ct. 467, 38 L. Ed. 2d 427 (1973)]; the majority would limit 'the intensity of such a search . . . to that which, under the circumstances, is necessary to the discovery of weapons. Thus, it will depend upon what is reasonable to the officer at this time and permits the accomplishment of the purpose of neutralizing potentially available weapons without endorsing a broader purpose of searching for evidence.' " *State* v. *Dukes,* supra, 128 (*Shea, J.,* concurring).

As the *Dukes* majority pointed out, our state constitution affords a defendant arrested for a traffic offense greater protection from searches than does the federal constitution. Specifically, the officer is limited to a search of the defendant's person for weapons. The scope of that search, however, may go beyond a mere

pat-down search. That scope depends on "what is reasonable to the officer at that time and permits the accomplishment of the purpose of neutralizing potentially available weapons without endorsing a broader purpose of searching for evidence." *State* v. *Dukes,* supra, 122–23.[4]

Applying this principle to the present case, we conclude that the trial court correctly found that Gerovitz limited his search for weapons and that he acted reasonably under the circumstances. The police officer did not conduct a full search of the defendant's person. He merely conducted a pat-down search for weapons and he appropriately extended this search by removing the bulky object from the defendant. Furthermore, he acted reasonably in opening the bulky wallet in light of his experience that a small weapon such as a razor blade could possibly have been concealed in the wallet.

Accordingly, the search of the defendant's person was a reasonable search incident to a lawful custodial arrest for a traffic offense, and did not violate the defendant's state constitutional protections afforded by article first, § 7. In view of this conclusion, we need not address the issue regarding the court's alternative holding, namely, that this evidence would have been found under the inevitable discovery doctrine.

There is no error.

In this opinion the other judges concurred.

---

[4] While the *Dukes* majority stated also that "[t]here can be . . . circumstances reasonably apparent to the officer that permit a full search of the person, both for weapons and for evidence"; *State* v. *Dukes,* 209 Conn. 98, 123, 547 A.2d 10 (1988); this part of the principle does not apply to the present case.