STATE OF CONNECTICUT *v.* JUSTINIANO TORRES
(14838)

PETERS, C. J., CALLAHAN, BORDEN, BERDON and NORCOTT, Js.

Argued May 10—decision released July 26, 1994

*Charles L. Howard,* with whom were *Sheila Huddleston* and, on the brief, *Gregory T. D'Auria,* for the appellant (defendant).

*Mitchell S. Brody,* assistant state's attorney, with whom, on the brief, were *John T. Redway,* state's attorney, and *Bernadette Conway,* assistant state's attorney, for the appellee (state).

BORDEN, J. In this certified appeal, the defendant, Justiniano Torres, appeals from the judgment of the Appellate Court affirming his conviction of possession of marijuana with the intent to sell in violation of General Statutes § 21a-277 (b),[1] and possession with the intent to use drug paraphernalia in violation of General Statutes § 21a-267 (a).[2] Following the trial court's denial of his motion to suppress, the defendant entered a conditional plea of nolo contendere, pursuant to General Statutes § 54-94a, to the two offenses. The trial court rendered a judgment of conviction, which the Appellate Court affirmed. *State* v. *Torres,* 31 Conn. App. 443, 625 A.2d 239 (1993).

We granted the defendant's petition for certification to appeal limited to the following questions: (1) "Did the Appellate Court correctly conclude that an inadequate record barred review of the defendant's unpreserved claim that a sniff by a police dog of the exterior of the defendant's stopped car was a search

---

[1] General Statutes § 21a-277 (b) provides in relevant part: "PENALTY FOR ILLEGAL MANUFACTURE, DISTRIBUTION, SALE, PRESCRIPTION, DISPENSING. . . .

"(b) Any person who . . . transports with intent to sell or dispense, possesses with intent to sell or dispense . . . any controlled substance, except a narcotic substance, or a hallucinogenic substance other than marijuana, except as authorized in this chapter, may, for the first offense, be fined not more than twenty-five thousand dollars or be imprisoned not more than seven years or be both fined and imprisoned; and, for each subsequent offense, may be fined not more than one hundred thousand dollars or be imprisoned not more than fifteen years, or be both fined and imprisoned."

[2] General Statutes § 21a-267 (a) provides in relevant part: "PROHIBITED ACTS RE DRUG PARAPHERNALIA. (a) No person shall use or possess with intent to use drug paraphernalia, as defined in subdivision (20) of section 21a-240, to . . . pack, repack, store, contain or conceal . . . any controlled substance . . . . Any person who violates any provision of this subsection shall be guilty of a class C misdemeanor."

that was in violation of the state and federal constitutions because it was not supported by reasonable and articulable suspicion?''; and (2) ''If the answer to question (1) is no, was the dog sniff a search under either the federal or state constitution that was not supported by reasonable and articulable suspicion?'' *State* v. *Torres,* 227 Conn. 906, 632 A.2d 698 (1993). We affirm the judgment of the Appellate Court.

The Appellate Court's opinion states the facts found by the trial court on the defendant's motion to suppress: ''On August 13, 1990, at approximately 8 p.m., State Trooper David Mitch was informed by his dispatcher that the state police had received an anonymous tip that 'Junior Torres' had gone to New York to pick up marijuana and would be returning to 93 Atwood Street in Hartford within the next one to two hours. According to the informant, Torres would be operating a black 1977 Ford Thunderbird with Massachusetts license plates.

''Acting on the tip, Mitch proceeded with Yukon Jack, a German shepherd police dog trained to sniff out narcotics, to the Middletown rest area of Interstate 91 to monitor the northbound traffic lanes. At approximately 9:35 p.m., Mitch observed a black Thunderbird with Massachusetts license plates traveling north at seventy miles per hour. Mitch followed the automobile and radioed a request for a registration check. Upon receiving a reply that the license number was not listed on the computer, Mitch directed the operator of the automobile to pull over and asked for his license and registration. The defendant was the operator of the automobile. He did not have a license but identified himself as Justiniano Torres and said that he was [coming] from New York en route to 93 Atwood Street in Hartford.

''Acting on the corroboration of the details supplied by the informant, Mitch utilized Yukon Jack to conduct

an exterior search of the automobile while the defendant and his passenger remained seated in the automobile. Yukon Jack began to circle the automobile and exhibited a positive alert for narcotics at the trunk of the vehicle. Mitch, now accompanied by another trooper and a detective, searched the trunk but found no narcotics. Reasoning that the odor of narcotics had been carried by wind currents to the trunk area from the front of the automobile, they searched the engine compartment, where they discovered a large cellophane envelope containing marijuana hidden under the automobile's battery. Mitch then placed the defendant under arrest.

"At trial, the defendant moved to suppress the marijuana on the ground that the warrantless search of the automobile was not supported by probable cause. The court, *O'Keefe, J.,* denied the motion and the defendant pleaded nolo contendere." *State* v. *Torres,* supra, 31 Conn. App. 444–45.

In his appeal to the Appellate Court, the defendant claimed for the first time that the canine sniff constituted a search under both the United States and Connecticut constitutions, and that there was no reasonable and articulable suspicion to justify such a search.[3] The Appellate Court declined to review this unpreserved

---

[3] The defendant also claimed that there was no probable cause to justify the search under the hood of his automobile. The Appellate Court stated that "the trial court's conclusion that probable cause existed to search the entire automobile was grounded not only on the [canine] sniff, which the court found to be reliable, but also on its finding that several details of the informant's tip had been corroborated. We conclude that, in light of those findings, the court properly determined that probable cause existed." *State* v. *Torres,* supra, 31 Conn. 452. The defendant does not claim in this appeal that, if the canine sniff was permissible, the ensuing search under the hood of the automobile was not supported by probable cause. Indeed, he conceded at oral argument in this court that the validity of the search under the hood rises or falls on whether the canine sniff was supported by reasonable and articulable suspicion.

claim on the ground that the record was inadequate to review it as required by the first prong of the test set forth in *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989). The Appellate Court interpreted our holding in *State* v. *Stanley,* 223 Conn. 674, 613 A.2d 788 (1992), to preclude review of the defendant's canine sniff claim because the trial court had not made a determination of whether the sniff was a search under the state or federal constitution, or, if it was a search, whether this search was supported by reasonable and articulable suspicion. The Appellate Court reasoned that the record was inadequate, because "there was no reason for the trial court to make factual findings on these issues." *State* v. *Torres,* supra, 31 Conn. App. 449. This appeal followed.

I

The defendant first claims that the Appellate Court improperly concluded that the trial court record was inadequate to review the defendant's canine sniff claim under *State* v. *Golding,* supra, 213 Conn. 233. We agree.

In *Golding,* we set forth the conditions under which a defendant can prevail on a constitutional claim that had not adequately been preserved at trial. We held that the defendant can prevail only if all of the following conditions are met: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." *State* v. *Golding,* supra, 213 Conn. 239–40.

An appellate court "remain[s] free to dispose of the claim by focusing on whichever condition is most rele-

vant in the particular circumstances." *State* v. *Stanley,* supra, 223 Conn. 674; *State* v. *Nelson,* 221 Conn. 635, 639, 605 A.2d 1381 (1992); *State* v. *Pinnock,* 220 Conn. 765, 778, 601 A.2d 521 (1992); *State* v. *Watlington,* 216 Conn. 188, 192, 579 A.2d 490 (1990); *State* v. *Golding,* supra, 213 Conn. 240. In *State* v. *Stanley,* supra, the defendant on appeal claimed for the first time that, under the state constitution, the state was required to prove beyond a reasonable doubt that the defendant's waiver of his *Miranda*[4] rights had been knowing, intelligent and voluntary. We declined to review the defendant's claim, however, because the defendant had not raised the issue of the proper standard at trial, and the trial court had made its determination using a preponderance of the evidence standard. "We [did] not know, therefore, whether the trial court would have found that the state had sustained that higher burden of proof [beyond a reasonable doubt]. . . . Since such a determination is a question of fact, even if we were to agree with the defendant, we would have to remand the case to the trial court for that factual determination, rather than to grant the defendant a new trial. Since, under the test in *Golding,* we must determine whether the defendant can *prevail* on his claim, a remand to the trial court would be inappropriate. The first prong of *Golding* was designed to avoid remands for the purpose of supplementing the record." (Emphasis in original.) *State* v. *Stanley,* supra, 689–90.

The Appellate Court read *Stanley* too broadly in applying its holding in the circumstances of this case. In *Stanley,* we held that *Golding* review was unavailable not merely because the record lacked a trial court determination on the issue appealed, but because in that case the record lacked a trial court finding of fact forming the basis for the defendant's claim. A record is not

---

[4] *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

inadequate for *Golding* purposes because the trial court has not reached a conclusion of law if the record contains the factual predicates for making such a determination.

In contrast to *Stanley*, in this case the Appellate Court was not asked to make a determination of fact that the trial court had not been asked to make. In this case, the Appellate Court was asked to reach a legal conclusion that the trial court had not been asked to address, based on an undisputed factual record.

Under the *Golding* doctrine, a conclusion of law can properly be made by an appellate court, even if the trial court was never asked to make, and never made, such a determination, so long as the factual record is adequate to provide the basis for such a conclusion. Indeed, the court in *Golding* recognized that this would frequently be the case in the review of unpreserved claims. "An adequate factual record is especially crucial when dealing with a claim that was not preserved at trial, since consideration is being sought for review of a claim for which we lack a trial court ruling." *State* v. *Golding,* supra, 213 Conn. 240 n.10.

Reasonable and articulable suspicion is an objective standard that focuses not on the actual state of mind of the police officer, but on whether a reasonable person, having the information available to and known by the police, would have had that level of suspicion. *State* v. *Januszewski,* 182 Conn. 142, 148–49, 438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S. Ct. 3159, 69 L. Ed. 2d 1005 (1981). Futhermore, the question of whether reasonable and articulable suspicion arises from an underlying set of facts is a legal conclusion that, if made by a trial court, is subject to plenary review by an appellate court. See *State* v. *Geisler,* 222 Conn. 672, 693, 610 A.2d 1225 (1992). Accordingly, if there is in the appellate record a sufficient underlying

set of facts upon which an appellate court can answer the question of whether a reasonable and articulable suspicion existed, the first prong of *Golding* is satisfied. In this case, therefore, the question is the existence of such a sufficient underlying set of facts.

We conclude that the trial court record in this case contains the factual basis necessary for appellate consideration of the defendant's claim. The necessary facts are derived from the testimony of Mitch, the state's witness at the suppression hearing. Indeed, the defendant does not contest those facts and relies upon them in his brief. Furthermore, the state does not claim that, had the defendant questioned in the trial court the validity of the canine sniff, the state would have presented more or different evidence to support its validity. The state conceded at oral argument that a decision by the trial court on the defendant's claim would have added little to the record. In this case, therefore, the record contains undisputed facts sufficient to determine that a canine sniff had occurred and the circumstances under which it had occurred. There is, therefore, an adequate record for review of the defendant's claim.

## II

The defendant next claims that the canine sniff of his automobile was a "search" under the fourth amendment to the United States constitution and the constitution of Connecticut, article first, § 7, and that it was not based on reasonable and articulable suspicion. The state responds that: (1) the canine sniff was not a search under either constitution; and (2) even if it were, it was supported by reasonable and articulable suspicion. Because we conclude that the police had a reasonable and articulable suspicion in this case, we need not reach the issue of whether the canine sniff at issue constituted a search under either the federal or state constitution.

The question of whether, and, if so, under what factual circumstances, a canine sniff may constitute a

"search" has yielded a variety of judicial responses under both the fourth amendment and analogous state constitutional provisions.[5] We are not prepared to say that a canine sniff is always, or is never, a search within the meaning of either the fourth amendment or article first, § 7. It is not necessary to the determination of this appeal that we decide whether the circumstances of this canine sniff constituted such a search because: (1) we have found no case that has held such a sniff

---

[5] Federal courts that have addressed the issue of whether a canine sniff is a search have come to different results depending on the circumstances of the search and to what extent the search infringes on reasonable expectations of privacy. See, e.g., *United States* v. *Place,* 462 U.S. 696, 103 S. Ct. 2637, 77 L. Ed. 2d 110 (1983) (canine sniff of luggage detained upon reasonable suspicion in public airport does not constitute search); *United States* v. *Dovali-Avila,* 895 F.2d 206, 207–208 (5th Cir. 1990) (canine sniff at primary and secondary border checkpoints not search); *United States* v. *Stone,* 866 F.2d 359, 363 (10th Cir. 1989) (canine sniff of exterior of car stopped on reasonable suspicion to believe it contains narcotics not search); *United States* v. *Hardy,* 855 F.2d 753 (11th Cir.), reh. denied, 861 F.2d 1281 (11th Cir. 1988), cert. denied, 489 U.S. 1019, 109 S. Ct. 1137, 103 L. Ed. 2d 198 (1989) (canine sniff analogous to *Terry* stop); *United States* v. *Whitehead,* 849 F.2d 849 (4th Cir.), cert. denied, 488 U.S. 983, 109 S. Ct. 534, 102 L. Ed. 2d 566 (1988) (reasonable, articulable suspicion required for canine sniff of train sleeping compartment); *United States* v. *Quinn,* 815 F.2d 153 (1st Cir. 1987) (reasonable, articulable suspicion required for canine sniff of stopped car); *United States* v. *Thomas,* 757 F.2d 1359 (2d Cir.), cert. denied sub nom. *Fisher* v. *United States,* 474 U.S. 819, 106 S. Ct. 66, 88 L. Ed. 2d 54 (1985) (probable cause required for canine sniff outside residence).

State courts also have reached varied conclusions under their state constitutions. See, e.g., *McGahan* v. *State,* 807 P.2d 506, 510–11 (Alaska App. 1991) (canine sniff of warehouse exterior accessible to public is state constitutional search requiring reasonable, articulable suspicion); *Pooley* v. *State,* 705 P.2d 1293, 1311 (Alaska App. 1985) (exposure of luggage checked with airline to canine sniff is state constitutional search requiring reasonable, articulable suspicion); *People* v. *Mayberry,* 31 Cal. 3d 335, 340, 644 P.2d 810, 182 Cal. Rptr. 617 (1982) (canine sniff of containers in baggage area of airport not state constitutional search); *People* v. *Unruh,* 713 P.2d 370, 377–78 (Colo.), cert. denied, 476 U.S. 1171, 106 S. Ct. 2894, 90 L. Ed. 2d 981 (1986) (canine sniff of safe is state constitutional search requiring reasonable, articulable suspicion); *O'Keefe* v. *State,* 189 Ga. App. 519, 525–26, 376 S.E.2d 406 (1988) (canine sniff of exterior of automobile not state constitutional search); *State* v. *Pellicci,* 580 A.2d 710, 715–17 (N.H. 1990) (canine

of an automobile, properly stopped by the police,[6] to a standard more demanding than reasonable and articulable suspicion; see footnote 5; (2) the defendant in oral argument in this court conceded that standard to be applicable to the facts of this case; and (3) the canine sniff of the defendant's automobile at issue here was based on reasonable and articulable suspicion. Ordinarily, "[c]onstitutional issues are not considered unless absolutely necessary to the decision of a case . . . ." (Internal quotation marks omitted.) *State* v. *Cofield,* 220 Conn. 38, 49–50, 595 A.2d 1349 (1991); *State* v. *Onofrio,* 179 Conn. 23, 37–38, 425 A.2d 560 (1979); *State* v. *DellaCamera,* 166 Conn. 557, 560–61, 353 A.2d 750 (1974); see *Ashwander* v. *Tennessee Valley Authority,* 297 U.S. 288, 346–47, 56 S. Ct. 466, 80 L. Ed. 688 (1936) (Brandeis, J., concurring).

The reasonable and articulable suspicion standard also defines the showing required for a prearrest detention under the fourth and fourteenth amendments to the federal constitution; *Terry* v. *Ohio,* 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); and under our

---

sniff of vehicle's exterior is state constitutional search requiring reasonable, articulable suspicion); *People* v. *Dunn,* 77 N.Y.2d 19, 25, 564 N.E.2d 1054, 563 N.Y.S.2d 388 (1990), cert. denied, 501 U.S. 1219, 111 S. Ct. 2830, 115 L. Ed. 2d 1000 (1991) (canine sniff of common hallway outside defendant's apartment door is state constitutional search requiring reasonable, articulable suspicion); *State* v. *Kosta,* 75 Or. App. 713, 708 P.2d 365, 368 n.10 (1985) (canine sniff of package in mail akin to valid stop), aff'd on other grounds, 304 Or. 549, 748 P.2d 72 (1987); *Commonwealth* v. *Martin,* 534 Pa. 136, 140–41, 626 A.2d 556 (1993) (canine sniff of defendant's person requires probable cause); *Commonwealth* v. *Johnston,* 515 Pa. 454, 462–66, 530 A.2d 74 (1987) (canine sniff of rented storage locker is state constitutional search requiring reasonable, articulable suspicion); *State* v. *Boyce,* 44 Wash. App. 724, 725–26, 723 P.2d 28 (1986) (circumstances of canine sniff determine whether it is search—sniff of safety deposit box at bank not state constitutional search).

[6] The defendant does not contest that Mitch had reasonable and articulable suspicion to stop the defendant's automobile on the basis of the absence of registration information on the police computer and on the automobile's excessive speed.

state constitution. *State* v. *Lamme,* 216 Conn. 172, 579 A.2d 484 (1990). "In justifying the particular intrusion 'the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.' *Terry* v. *Ohio,* supra, [392 U.S.] 21." *State* v. *Januszewski,* 182 Conn. 142, 148-49. "The police officer's decision . . . must be based on more than hunch or speculation." *State* v. *Cofield,* supra, 220 Conn. 45. We conclude that the undisputed facts satisfied this standard.

To determine whether the police had a reasonable and articulable suspicion that warranted the canine sniff around the defendant's automobile, we look to the totality of the circumstances surrounding the police action. *State* v. *Aillon,* 202 Conn. 385, 399, 521 A.2d 555 (1987); *State* v. *Aversa,* 197 Conn. 685, 690, 501 A.2d 370 (1985); see also *United States* v. *Cortez,* 449 U.S. 411, 417, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981). In the present case, the anonymous tip was telephoned to the police and relayed by a dispatcher to the arresting officer. The tip included the name of the person who would be driving the automobile, the model, year and color of the automobile, the fact that the automobile bore Massachusetts license plates, the specific destination of the automobile, and the approximate time the automobile would be passing through the Middletown area on its way to Hartford. Every aspect of the tip was corroborated by Mitch during the period before and after he stopped the defendant's car. The tip not only revealed facts in existence at the time of the call, but also predicted the defendant's future behavior, namely his destination and the approximate time of his arrival. This was a strong indication of the reliability of the tip, "because it demonstrated inside information—a special familiarity with [the defendant's] affairs. . . . Because only a small number of people are generally

privy to an individual's itinerary, it is reasonable for police to believe that a person with access to such information is likely to also have access to reliable information about that individual's illegal activities." *Alabama* v. *White,* 496 U.S. 325, 332, 110 S. Ct. 2412, 110 L. Ed. 2d 301 (1990).[7] The high indicia of reliability of this tip combined with corroboration of innocuous facts by independent police work was sufficient to provide Mitch with a reasonable and articulable suspicion that the defendant was carrying the drugs indicated by the tipster.[8] Id.

The judgment of the Appellate Court is affirmed.

In this opinion PETERS, C. J., and CALLAHAN and NORCOTT, Js., concurred.

BERDON, J., concurring. I concur in the result because I agree that the police had a reasonable and

---

[7] We are not persuaded by the defendant's argument that because the tipster did not speak directly to Mitch, we cannot defer to what the defendant refers to as the trooper's "learned instincts" regarding the reliability of the tip. If anything, the fact that the call came in to the police and the tip was relayed to Mitch by a dispatcher serves to diminish any concern with citizens "being seized and questioned by any officer who is prepared to testify that the warrantless stop was based on an anonymous tip predicting whatever conduct the officer just observed." *Alabama* v. *White,* supra, 496 U.S. 333 (Stevens, J., dissenting).

We do not consider the tipster's failure to supply other details, such as the defendant's full name, and that he was accompanied by a young woman and that the automobile belonged to his brother, to outweigh the fact that all the details that were supplied were corroborated. Contrary to the defendant's suggestion, we think the fact that the defendant gave his name as "Justiniano Torres" sufficiently corroborated the information provided by the tip that "Junior Torres" would be driving the car.

[8] We have questioned "whether verified information regarding such mundane facts as the defendant's address and the model of his cars, taken by itself, may properly be found to establish the reliability of an informant" in determining whether an affidavit establishes probable cause. *State* v. *DeFusco,* 224 Conn. 627, 644–45 n.24, 620 A.2d 746 (1993). Such verified information can, however, provide a police officer with a reasonable and articulable suspicion, a lesser standard than probable cause, protecting against less intrusive infringements on privacy rights such as *Terry* stops and, arguendo, canine sniffs. *Alabama* v. *White,* supra, 496 U.S. 330.

articulable suspicion to conduct the canine sniff of the car and because the defendant, Justiniano Torres, does not claim that a higher standard must be met under the state or federal constitution. Accordingly, I leave to another day the issues of whether a sniff by a trained police dog is a "search" in the constitutional sense, and, if so, whether a canine sniff search of a car requires probable cause.