DAVID FISHBEIN *v.* MICHAEL KOZLOWSKI,
COMMISSIONER OF MOTOR VEHICLES
(AC 16719)

Lavery, Dupont and Daly, Js.

---

Argued January 23—officially released April 28, 1998

*Jeffrey D. Brownstein,* with whom, on the brief, was *Gregory A. Thompson,* for the appellant (plaintiff).

*Robert L. Marconi,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellee (defendant).

*Opinion*

DALY, J. The plaintiff, David Fishbein, appeals from the judgment of the trial court dismissing his appeal from the defendant's order suspending his motor vehicle operator's license for a period of ninety days following his arrest for operating a motor vehicle while under the influence of liquor or drugs in violation of General Statutes § 14-227a (a). The sole issue on appeal is whether the police had a reasonable and articulable suspicion to justify stopping the plaintiff's vehicle. We affirm the judgment of the trial court.

The facts are undisputed. On March 5, 1996, New Haven police officers Peter A. Beckwith and Paul Cavalier were assigned to conduct a surveillance of a house at 180 Poplar Street in New Haven. They were parked at the intersection of Exchange and Poplar Streets at approximately 2:15 a.m. The neighborhood and the 180

Poplar Street house were known to the police as places where illicit drug sales often occurred.

While they were parked, a blue sedan operated by the plaintiff entered Poplar Street, stopped and its lights and engine were turned off. The passenger, Debbie Candelora, emerged from the vehicle and went to the front door at 180 Poplar Street. After the door was opened, Candelora had a brief conversation with an occupant of the house. When she returned to the vehicle, the engine was started and the lights turned on. The vehicle was then stopped by the police. Candelora denied any drug purchase and indicated that she was looking for her son. While the plaintiff was in the driver's seat, alcohol was detected on his breath and, after failing the field sobriety test, he was arrested for operating a motor vehicle while under the influence of intoxicating liquor in violation of § 14-227a (a).[1] The plaintiff subsequently failed the chemical blood alcohol tests,[2] which resulted in the suspension of his motor vehicle operator's license. This appeal followed.

"In reviewing the action of an administrative agency the trial court must accept the evidence presented to such agency uncoated by any judicial gloss. 'Conclusions reached by an administrative body must be upheld by the court if they are supported by the evidence that was before the administrative body. *Balch Pontiac-Buick, Inc.* v. *Commissioner of Motor Vehicles*, 165 Conn. 559, 563, 345 A.2d 520 [1973]. The credibility of witnesses and the determination of issues of fact are matters within the province of the administrative

[1] General Statutes § 14-227a (a) provides in relevant part: "No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense . . . if he operates a motor vehicle . . . (1) while under the influence of intoxicating liquor or any drug or both or (2) while the ratio of alcohol in the blood of such person is ten-hundredths of one per cent or more of alcohol, by weight."

[2] The first test was administered at 3:07 a.m., with a result of 0.125, and the second test was administered at 3:44 a.m., with a result of 0.118.

agency. *Jaffe* v. *State Department of Health,* 135 Conn.
339, 343, 64 A.2d 330 [1949]. It is not the function of
the court to retry the case. The question is not whether
the trial court would have reached the same conclusion
but whether the record before the commission supports
the action taken. *Conley* v. *Board of Education,* 143
Conn. 488, 492, 123 A.2d 747 [1956].' *Williams* v. *Liquor
Control Commission,* 175 Conn. 409, 414, 399 A.2d 834
(1978)." *Hospital of St. Raphael* v. *Commission on
Hospitals & Health Care,* 182 Conn. 314, 318, 438 A.2d
103 (1980); see also 2 B. Holden & J. Daly, Connecticut
Evidence (2d Ed. 1988) § 125a, p. 1219. "With regard
to questions of fact, it is neither the function of the trial
court nor of this court to retry the case or to substitute
its judgment for that of the administrative agency. . . .
Judicial review of conclusions of law reached adminis-
tratively is also limited. The court's ultimate duty is
only to decide whether, in light of the evidence, the
[agency] has acted unreasonably, arbitrarily, illegally,
or in abuse of its discretion. . . . *Griffin Hospital* v.
*Commission on Hospitals & Health Care,* 200 Conn.
489, 496, 512 A.2d 199, appeal dismissed, 479 U.S. 1023,
107 S. Ct. 781, 93 L. Ed. 2d 819 (1986)." (Internal quota-
tion marks omitted.) *Connecticut Light & Power Co.*
v. *Dept. of Public Utility Control,* 219 Conn. 51, 57–58,
591 A.2d 1231 (1991).

The defendant challenges his arrest on the ground
that the police officer lacked reasonable and articulable
suspicion to stop his vehicle. " '[T]he principles of fun-
damental fairness that are the hallmark of due process
permit a brief investigatory detention, even in the
absence of probable cause, if the police have a reason-
able and articulable suspicion that a person has commit-
ted or is about to commit a crime.' *State* v. *Lamme,*
216 Conn. 172, 184, 579 A.2d 484 (1990); see *Terry* v.
*Ohio,* 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).
In determining the constitutional validity of an investi-
gatory stop, both the United States Supreme Court and

our Supreme Court require a balancing of the nature of the intrusion upon personal security against the importance of the government interest inducing that intrusion. *United States* v. *Hensley*, 469 U.S. 221, 105 S. Ct. 675, 83 L. Ed. 2d 604 (1985); *State* v. *Mitchell*, 204 Conn. 187, 527 A.2d 1168, cert. denied, 484 U.S. 927, 108 S. Ct. 293, 98 L. Ed. 2d 252 (1987). Our Supreme Court has also recognized the pervasive societal interest in the apprehension and punishment of drunken drivers and has found that 'balancing the circumscribed nature of a *Terry* stop intrusion against the serious risks of criminal behavior, especially in the context of the risks associated with driving while under the influence of intoxicating liquor . . . [brief detention] does not violate due process.' *State* v. *Lamme*, supra [184].

"In justifying the intrusion, 'the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.' *Terry* v. *Ohio*, supra, [392 U.S.] 21; *State* v. *Cofield*, 220 Conn. 38, 44, 595 A.2d 1349 (1991); *State* v. *Whitfield*, 26 Conn. App. 103, 110, 599 A.2d 21 (1991). In evaluating the validity of such a stop, courts consider whether, in light of 'the totality of the circumstances—the whole picture,' the police officer had 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.' *United States* v. *Cortez*, 449 U.S. 411, 417–18, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981); *State* v. *Mitchell*, supra, [204 Conn.] 195. Review of a trial court's determination of whether a reasonable and articulable suspicion exists 'involves a two part analysis: (1) whether the underlying factual findings of the trial court are clearly erroneous; and (2) whether the conclusion that those facts gave rise to such a suspicion is legally correct.' *State* v. *Kyles*, 221 Conn. 643, 660, 607 A.2d 355 (1992). 'The trial court's conclusions must stand unless they are legally and logically inconsistent with the facts.'

*State* v. *Cofield,* supra [44]." *State* v. *Harrison,* 30 Conn. App. 108, 111–13, 618 A.2d 1381 (1993), aff'd, 228 Conn. 758, 638 A.2d 601 (1994).

In this case, the police officers observed the plaintiff's vehicle at 2:15 a.m. on a street known for illicit drug sales. Candelora left the vehicle and went to the door of a residence reputed to be a place where drugs were sold. The door opened slightly and Candelora had a brief conversation with an occupant.

Under these circumstances, the officers had an objective basis to suspect that the plaintiff may have been involved in the purchase of narcotics. The facts of this case support the determination that a reasonable and articulable suspicion existed to justify the stop of the plaintiff's vehicle. We conclude that the trial court properly dismissed the plaintiff's appeal.

The judgment is affirmed.

In this opinion DUPONT, J., concurred.

LAVERY, J., dissenting. I respectfully dissent from the majority opinion, which affirms the trial court's dismissal of the plaintiff's appeal, taken under the judicial review provisions of General Statutes § 4-183, from an administrative decision of the defendant commissioner of motor vehicles. I disagree with the majority's decision that the police had a reasonable and articulable suspicion to justify their stopping the plaintiff's vehicle.

I agree with the majority that the facts are not in dispute. New Haven police officers Peter A. Beckwith and Paul Cavalier observed a blue sedan pull up to and park in front of 180 Poplar Street, at approximately 2:15 a.m. on the morning of March 5, 1996. The passenger, Debbie Candelora, exited the car and went to the front door at 180 Poplar Street. After Candelora knocked at the door, it was opened slightly and she talked to someone inside the house. Candelora then returned to the

car. As the vehicle's engine was started and its lights turned on, the police pulled up and stopped the car. Beckwith approached the car and spoke to Candelora, who denied that she had bought any drugs and said that she had asked the occupants of the house whether they had seen her son. Beckwith then questioned the plaintiff. I disagree with the majority's conclusion that these facts support the determination that reasonable and articulable suspicion existed.

"Under the fourth amendment to the United States constitution, and under article first, § 7, and article first, § 9, of the Connecticut constitution, a police officer may briefly detain an individual for investigative purposes if the officer has a reasonable and articulable suspicion that the individual has committed or is about to commit a crime. *Terry* v. *Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *State* v. *Oquendo*, 223 Conn. 635, 654, 613 A.2d 1300 (1992); *State* v. *Lamme*, 216 Conn. 172, 184, 579 A.2d 484 (1990)." *State* v. *Trine*, 236 Conn. 216, 223, 673 A.2d 1098 (1996). "Reasonable and articulable suspicion is an objective standard that focuses not on the actual state of mind of the police officer, but on whether a reasonable person, having the information available to and known by the police, would have had that level of suspicion." *State* v. *Torres*, 230 Conn. 372, 379, 645 A.2d 529 (1994). "Based upon [the] whole picture the detaining officers must have a particu-larized and objective basis for suspecting the particular person stopped of criminal activity. See, e.g., *Brown* v. *Texas*, [443 U.S. 47, 51, 99 S. Ct. 2637, 61 L. Ed. 2d 357 (1979)]; *United States* v. *Brignoni-Ponce*, [422 U.S. 873, 884, 95 S. Ct. 2574, 45 L. Ed. 2d 607 (1975)]. The idea that an assessment of the whole picture must yield a particularized suspicion contains two elements, each of which must be present before a stop is permissible. First, the assessment must be based upon all of the circumstances. . . . [Second, that assessment] must

raise a suspicion that the particular individual being stopped is engaged in wrongdoing." *United States* v. *Cortez*, 449 U.S. 411, 417–18, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981). "The police officer's decision . . . must be based on more than hunch or speculation." *State* v. *Cofield*, 220 Conn. 38, 45, 595 A.2d 1349 (1991). "The specific facts that form the basis of the stop also limit the scope of the officer's actions following the stop. . . . The results of the initial stop may arouse further suspicion or may dispel the questions in the officer's mind. If the latter is the case, the stop may go no further and the detained individual must be free to go. If, on the contrary, the officer's suspicions are confirmed or are further aroused, the stop may be prolonged and the scope enlarged as required by the circumstances." (Citations omitted; internal quotation marks.) *State* v. *Januszewski*, 182 Conn. 142, 149, 438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S. Ct. 3159, 69 L. Ed. 2d 1005 (1981).

The majority relies on the facts that the plaintiff drove on a street known for illicit drug activity at 2:15 a.m., that Candelora knocked on the door of a house reputed to be the scene of drug sales and that the door was opened just slightly. That is all. There is no indication that the officers ever observed anything pass between Candelora and the person she was observed speaking to at the door. Nor is there any indication that either the plaintiff or Candelora did anything that was suspicious other than being at the wrong place at the wrong time. Further, this is not a case where the police received an anonymous tip or informant's tip that the plaintiff or his passenger had been, were or were about to be engaged in criminal activity that would have justified the stop. See *Adams* v. *Williams*, 407 U.S. 143, 146, 92 S. Ct. 1921, 32 L. Ed. 2d 612 (1972); *State* v. *Marino*, 17 Conn. App. 677, 555 A.2d 455, cert. denied, 211 Conn. 803, 559 A.2d 1138 (1989).

"The fact that appellant was in a neighborhood frequented by drug users, standing alone, is not a basis for concluding that appellant himself was engaged in criminal conduct." *Brown* v. *Texas*, supra, 443 U.S. 52. "The inference that persons who talk to narcotics addicts are engaged in the criminal traffic in narcotics is simply not the sort of reasonable inference required to support an intrusion by the police upon an individual's personal security." *Sibron* v. *New York*, 392 U.S. 40, 62, 88 S. Ct. 1889, 20 L. Ed. 2d 917 (1968). In this case, as in *Sibron*, the police officers were not acquainted with Candelora or the plaintiff, were completely ignorant regarding the content of the conversation between Candelora and the person who opened the door, and failed to see anything pass between Candelora and that person. See id. I do not agree with the majority that because (1) it was 2:15 a.m., (2) the plaintiff was in a neighborhood and parked in front of a house known to the police as a place where drug transactions occurred, and (3) Candelora talked to an unidentified individual at the front door of that house, there was a proper basis for concluding that either the plaintiff or Candelora were engaged in criminal conduct or allowing the type of inference required to support an intrusion by the police on an individual's personal security.

To satisfy the reasonable and articulable standard on these facts, in light of the totality of the circumstances presented here, there needed to be something more. There needed to be some overt act. In *State* v. *Januszewski*, supra, 182 Conn. 142, a case relied on by both parties, our Supreme Court concluded that reasonable and articulable suspicion existed where a state trooper observed "two persons in the front seat of an automobile parked in a commuter parking lot at a time when the owners of such vehicles are customarily at work"; id., 149; and observed the passenger "drop down from the front seat and crawl out of the door and under the

motorcycle parked next to the automobile." Id., 144–45. The facts here do not contain "plainly furtive conduct" on the part of the plaintiff or Candelora. Again, this case does not involve a police tip or any observed activity rising to the level of plainly furtive conduct. Without more than the time and location, I cannot agree with the majority.

Because there was no reasonable and articulable suspicion to warrant the stopping of the vehicle and the questioning of Candelora, there was also none to warrant questioning the plaintiff. Even assuming there was reasonable and articulable suspicion to question Candelora, her responses should have dispelled any question in Beckwith's mind, and both Candelora and the plaintiff should have been free to go.

Therefore, I respectfully dissent from the majority opinion because reasonable and articulable suspicion did not exist under the facts in this case.

I would reverse the judgment and remand the case to the trial court with direction to sustain the plaintiff's appeal.