STATE OF CONNECTICUT *v.* JEFFREY L. DONAHUE
(AC 18606)

Landau, Schaller and Daly, Js.

Argued February 23—officially released May 25, 1999

*Kevin C. Connors*, for the appellant (defendant).

*Robert M. Spector*, deputy assistant state's attorney, with whom, on the brief, were *Mark S. Solak*, state's attorney, and *Roger Caridad*, assistant state's attorney, for the appellee (state).

*Opinion*

DALY, J. The defendant, Jeffrey Donahue, appeals from the judgment of conviction, rendered after the defendant entered a written conditional plea of nolo contendere,[1] of operating a motor vehicle while under the influence of intoxicating liquor or drugs in violation

---

[1] The defendant entered this plea conditioned on his right to appeal the trial court's ruling. See General Statutes § 54-94a; Practice Book § 61-6.

of General Statutes § 14-227a.[2] The sole issue on appeal is whether the police officer had a reasonable and articulable suspicion to justify stopping the defendant's vehicle. We affirm the judgment of the trial court.

The facts are undisputed. On December 10, 1997, Sergeant Todd Lynch of the Connecticut state police was on routine patrol on Club Road in Windham. As a shift supervisor, Lynch normally would not be on street patrol. This area, however, had experienced a dramatic increase in criminal activity in the previous four to six weeks, which he was attempting to counteract with his help on patrol. Specifically, Lynch was patrolling a cemetery next to a public housing project located on Club Road where drug dealing and prostitution often took place. Individuals would often park their vehicles at the commercial establishments along Club Road and then walk through the cemetery into the housing project to engage in these illegal activities.[3]

As Lynch was leaving the cemetery at approximately 1:50 a.m., he noticed a vehicle operated by the defendant turn abruptly from Club Road into the vacant parking lot of the French Club, a private social club that had closed for the evening. The defendant had a passenger with him in the car. As the defendant parked his vehicle and kept the engine running in the dimly lit and deserted

[2] General Statutes § 14-227a (a) provides in relevant part: "No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense . . . if he operates a motor vehicle . . . (1) while under the influence of intoxicating liquor or any drug or both or (2) while the ratio of alcohol in the blood of such person is ten-hundredths of one per cent or more of alcohol, by weight."

[3] The cemetery is located across the street from the French Club and is also near a golf course, several liquor establishments and a car dealership along Club Road. Specific criminal activity giving rise to the heightened attention at these establishments consisted of damaged vehicles, theft of car parts from the car dealership, theft of golf carts and two-way radios from the golf course and assaults at the French Club.

parking lot directly across from the entrance to the cemetery, Lynch drove his vehicle across the street toward the defendant's vehicle. By the time Lynch actually entered the French Club parking lot, the defendant had positioned his vehicle so that it was facing the exit of the parking lot. Lynch then made a U-turn in the parking lot so that he could approach the defendant's vehicle from behind and activated his red, yellow and blue flashers, but not his light bar. Before exiting his vehicle, Lynch radioed the defendant's license plate number to the Colchester barracks to find out whether the defendant's vehicle was stolen and if there were any outstanding warrants for its registered owner. Lynch learned that the vehicle was neither reported stolen, nor were there any outstanding warrants.

Upon receiving this information, Lynch exited his vehicle and approached the defendant's vehicle to ask the defendant for his license and registration. The defendant rolled down his window when he saw Lynch at his driver's side window. At that point, Lynch detected alcohol on the defendant's breath and, after the defendant failed a field sobriety test, Lynch arrested him for operating a motor vehicle while under the influence of intoxicating liquor in violation of § 14-227a. The defendant subsequently failed a chemical blood alcohol test,[4] which resulted in the suspension of his motor vehicle operator's license. This appeal followed.

The defendant claims that the trial court improperly denied his motion to suppress evidence obtained after his initial detention because the police officer lacked a

---

[4] On April 14, 1998, the defendant filed a motion to suppress seeking, inter alia, the suppression of the chemical blood test because it was not administered by a properly certified person. At the May 14, 1998 suppression hearing, the state and the defendant stipulated that the officer conducting the chemical blood test was not properly certified at the time the test was administered. The trial court granted the defendant's motion as it pertained to the results of the chemical blood test.

reasonable and articulable suspicion to stop his vehicle. We disagree.

"[T]he principles of fundamental fairness that are the hallmark of due process permit a brief investigatory detention, even in the absence of probable cause, if the police have a reasonable and articulable suspicion that a person has committed or is about to commit a crime. *State* v. *Lamme*, 216 Conn. 172, 184, 579 A.2d 484 (1990); see *Terry* v. *Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). In determining the constitutional validity of an investigatory stop, both the United States Supreme Court and our Supreme Court require a balancing of the nature of the intrusion upon personal security against the importance of the government interest inducing that intrusion. *United States* v. *Hensley*, 469 U.S. 221, 105 S. Ct. 675, 83 L. Ed. 2d 604 (1985); *State* v. *Mitchell*, 204 Conn. 187, 527 A.2d 1168, cert. denied, 484 U.S. 927, 108 S. Ct. 293, 98 L. Ed. 2d 252 (1987). Our Supreme Court has also recognized the pervasive societal interest in the apprehension and punishment of drunken drivers and has found that balancing the circumscribed nature of a *Terry* stop intrusion against the serious risks of criminal behavior, especially in the context of the risks associated with driving while under the influence of intoxicating liquor . . . [brief detention] does not violate due process. *State* v. *Lamme*, supra, [184].

"In justifying the intrusion, the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. *Terry* v. *Ohio*, supra, [392 U.S.] 21; *State* v. *Cofield*, 220 Conn. 38, 44, 595 A.2d 1349 (1991); *State* v. *Whitfield*, 26 Conn. App. 103, 110, 599 A.2d 21 (1991). In evaluating the validity of such a stop, courts consider whether, in light of the totality of the circumstances—the whole picture, the

police officer had a particularized and objective basis for suspecting the particular person stopped of criminal activity. *United States* v. *Cortez*, 449 U.S. 411, 417–18, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981); *State* v. *Mitchell*, supra, [204 Conn.] 195. Review of a trial court's determination of whether a reasonable and articulable suspicion exists involves a two part analysis: (1) whether the underlying factual findings of the trial court are clearly erroneous; and (2) whether the conclusion that those facts gave rise to such a suspicion is legally correct. *State* v. *Kyles*, 221 Conn. 643, 660, 607 A.2d 355 (1992). The trial court's conclusions must stand unless they are legally and logically inconsistent with the facts. *State* v. *Cofield*, supra [44]." (Internal quotation marks omitted.) *Fishbein* v. *Kozlowski*, 48 Conn. App. 552, 555–57, 711 A.2d 733, cert. granted on other grounds, 247 Conn. 901, 719 A.2d 902 (1998).

At 1:50 a.m., Lynch observed the defendant's vehicle pull abruptly into a dimly lit, deserted parking lot in an area known for a recent increase in illicit drug sales, prostitution, theft, vandalism and assaults. Moreover, Lynch testified that he was patrolling Club Road specifically because his subordinate police officers needed help to respond to this increase in crime. Moreover, individuals would often park their vehicles along Club Road and walk across the cemetery into the public housing project to engage in drug dealing and prostitution. The defendant's actions, therefore, were particularly consistent with the type of suspicious activity that often preceded such crime in this area.

Under these circumstances, Lynch had an objective basis to suspect that the defendant may have been involved in the crimes previously described. The facts of this case support the determination that a reasonable and articulable suspicion existed to justify the stop of the defendant's vehicle. We conclude that the trial court

properly denied the defendant's motion to suppress as to this claim.

The judgment is affirmed.

In this opinion the other judges concurred.