[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION TO DISMISS
On June 28, 1998, the defendant, Craig Thome, was arrested for violation of General Statutes § 14-227a and § 14-236. The defendant has moved for dismissal of these pending motor vehicle charges pursuant to Practice Book Section 41-8(5). He claims that the arresting officer lacked sufficient probable cause to stop the automobile he was operating at the time and place in question.[1] The state counters that the arresting officer had a reasonable and articulable suspicion sufficient to justify stopping and investigating the defendant's operation of his motor vehicle, based upon his observation of specific motor vehicle violations.
Both parties were represented by counsel at the hearing of this motion. The court heard testimony from two witnesses, John Scavotto and Craig Thorne, and received a photographic exhibit. The parties have provided the court with legal authorities for review, in support of their positions on this matter.
 FACTS
From the evidence presented, the court finds the following facts:
Scavotto, a trained, experienced police officer employed by the East Windsor Police Department, was at work during the early CT Page 11514 morning hours of June 28, 1988. His duties included traffic patrol. At approximately 2:35 a.m. on June 28th, Scavotto was parked in his police vehicle, facing east, at the Sunoco service station near Bridge Street in East Windsor. From this vantage, he could observe the traffic leaving Interstate 91[2] via the southbound ramp of Exit 45. At about that time, Scavotto saw a black Lexus automobile leave Route I-91 by way of that exit. The car stopped at a blinking light at the intersection of the exit ramp with Bridge Street, then turned left onto Bridge Street, headed eastbound. Scavotto observed that in making this turn, the black vehicle proceeded into the wrong lane of Bridge Street, operating in the westbound lane for approximately fifty feet before entering the assigned eastbound lane traffic lane. Scavotto drove his vehicle away from the Sunoco station, following closely behind the black automobile for a distance of approximately seven hundred feet.
Scavotto then observed the black automobile make a left turn into a parking lot that serves a Shell service station and an adjacent Burger King restaurant, also located on Bridge Street. He noted that the black automobile's tires hit the curb of a sidewalk near the service station building, whereupon the vehicle came to a stop. He observed an individual, subsequently identified as the defendant, as he exited the driver's side of the vehicle, momentarily remained outside the car, then re-entered the vehicle and resumed its operation. Scavotto drove into this area as he observed the defendant, and then followed him out of the lot as he proceeded in a westbound direction on Bridge Street.
Scavotto remained a close distance behind the defendant, following as the black automobile as it made a left turn to enter I-91 southbound at Exit 45. The area of this highway entrance was well illuminated by street lights and the lights in the vicinity of the gas station. In turning to enter Route I-91, Scavotto observed the defendant operate his vehicle in such a manner that he nearly came into contact with a large, stationary tractor-trailer type vehicle which was parked, in plain view, partially upon the entrance ramp. The defendant initially drove directly toward the parked truck, came within one foot of the truck, then swerved to avoid this vehicle and continued onto the highway.
Continuing to follow closely behind the defendant, Scavotto then observed the black automobile as it was operated southbound CT Page 11515 upon Route I-91. Having entered the highway, the defendant's vehicle crossed partially into one designated lane of travel, and straddled the lane demarcation symbols as it continued southbound, simultaneously occupying two travel lanes upon the highway. The defendant continued this method of operation on Route I-91, followed by Scavotto, until he passed Exit 44 where the roadway curved to the right. Noting the defendant's continued operation across two lanes of the highway, as well as prior traffic violations or infractions, Scavotto determined that he would stop the black automobile. Scavotto activated his light system and siren to attract the defendant's notice, and notified the dispatcher of his intention to stop the black vehicle. Responding to Scavotto's signal, the defendant subsequently stopped his vehicle in the right breakdown lane of I-91, upon the Dexter Coffin Bridge.[3]
 BASIS FOR VALID TRAFFIC STOP
Our courts have recognized "the need for protection of the police . . . in the matter of highway stops of motor vehicles." (Emphasis added.) State v. Dukes, 209 Conn. 98, 121, 547 A.2d 10
(1988). It is undisputed that a police officer who observes a motor vehicle violation has the authority to conduct a "valid traffic stop" and to arrest the operator for this violation.State v. Wilkins, 240 Conn. 489, 490, 498, 692 A.2d 1233 (1997). The limited issue before this court is whether, under the circumstances of this case, Scavotto conducted a lawful and valid traffic stop after observing the defendant's operation of the black motor vehicle.
The Appellate Court has recently reiterated the principles the trial court must apply in assessing whether, as here implied by the defendant, an arresting officer had no lawful basis to stop the operator of a motor vehicle, but instead made a "pretextual traffic stop. " State v. Wildes, 20 Conn. App. 336,340, 566 A.2d 1371 (1989). The standard to be applied requires the court to determine whether, in stopping the motor vehicle in question, the officer involved had "a reasonable and articulable suspicion" that the operator of the black automobile had committed or was about to commit a crime or violation. State v.Donahue, 53 Conn. App. 497, 499-500 (1999). Our Supreme Court has clearly rejected the proposition that an investigatory detention cannot take place in the absence of a finding of "probable cause" that a crime has been, or is likely to be, committed. State v.Lamme, 216 Conn. 172, 185. 579 A.2d 484 (1990)[4] `"[T]he CT Page 11516 principles of fundamental fairness that are the hallmark of due process permit a brief [i]nvestigatory detention, even in the absence of probable cause, if the police have a reasonable andarticulable suspicion that a person has committed or is about to commit a crime. State v. Lamme, 216 Conn. 172, 184, 579 A.2d 484
(1990); see Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868,20 L.Ed.2d 889 (1968). This general principle was earlier defined as permitting an investigatory stop which is ""justified by some objective manifestation that the person stopped is, or is aboutto be, engaged in criminal activity." (Emphasis in the original; external citations omitted.) State v. Scully, 195 Conn. 668, 675
(1985). In determining the constitutional validity of an investigatory stop, both the United States Supreme Court and our Supreme Court require a balancing of the nature of the intrusion upon personal security against the importance of the government interest inducing that intrusion. . . . In justifying the intrusion, the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.Terry v. Ohio, supra, [392 U.S. 211; State v. Cofield,220 Conn. 38, 44, 595 A.2d 1349 (1991); State v. Whitfield,26 Conn. App. 103, 110, 599 A.2d 21 (1991). In evaluating the validity of such a stop, courts consider whether, in light of the totality of the circumstances — the whole picture, the police officer had a particularized and objective basis for suspecting the particular person stopped of criminal activity." (Emphasis added; external citations omitted.) State v. Donahue, supra,53 Conn. App. 500-501. See also State v. Coardes, 51 Conn. App. 112, 115,720 A.2d 1121 (1998) Reasonable and articulable suspicion, then "is an objective standard that focuses not on the actual state of mind of the police officer, but on whether a reasonable person, having the information available to and known by the police, would have that level of suspicion.' State v. Torres,230 Conn. 372, 379, 645 A.2d 529 (1994); State v. Januszewski,182 Conn. 142, 14849, 438 A.2d 679 (1980), cert denied, 453 U.S. 922,101 S.Ct. 3159, 69 L.Ed.2d 1005 (1981). "The police officer's decision . . . must be based on more than a hunch or speculation.' State v. Cofield, 220 Conn. 38, 45, 595 A.2d 1349
(1991)." State v. Daeria, supra, 51 Conn. App. 154.
The defendant has urged the court to rely upon the principles enunciated in Price Crowley v. Kozlowski, 49 Conn. App. 481,714 A.2d 719 (1998); in determining whether the automobile stop in question was acceptable pursuant to Connecticut law. Unlike the present case, Price-Crowley v. Kozlowski addressed the plaintiffs CT Page 11517 claim that "[p]ursuant to § 14-227b (f), to sustain a license suspension, the commissioner [of the Department of Motor Vehicles] must find, inter alia, that there was probable cause toarrest the individual in question." (Emphasis added.)Price-Crowley v. Kozlowski, supra, 49 Conn. App. 484. However, the issue brought before the court in this case was not directed at the circumstances of the defendant's arrest for violation of General Statutes § 14-227a, but at the stop of the defendant's motor vehicle that functioned as a predicate to his arrest.[5] Accordingly, the precepts of probable cause, as considered in Price-Crowley v. Kozlowski, are inapposite to the defendant's motion to dismiss. Compare Fishbein v. Kozlowski,48 Conn. App. 552, 555, 719 A.2d 902 (1998) (defendant challenged his arrest for violating General Statutes § 14-227a on the ground that a police officer lacked reasonable and articulable suspicion to stop his vehicle).
In reviewing the validity of Scavotto's stop of the defendant's vehicle, the court has examined the information relating to the specific information available to this officer "at the time of the initial intrusion and any rational inferences derived therefrom." (Emphasis and external citation omitted.)State v. Daeria, supra, 51 Conn. App. 155-156. Thus, in deciding whether Scavotto had a reasonable and articulable suspicion to justify stopping the defendant's automobile on Route I-91, the court relied only upon the information available to this officer before he activated his lights and siren in an attempt to bring the defendant's vehicle to a stop. State v. Daeria, supra,51 Conn. App. 156.
The facts of this case lead to the court's determination that a reasonable and articulable suspicion existed on June 28, 1998, sufficient to justify the officer's action in stopping the defendant's operation of the black automobile upon the highway. As an on duty municipal police officer, his work included enforcement of motor vehicle laws as well as the investigation of criminal activity. Where a police officer has personally observed a traffic offense, he has the authority to detain the offender, to arrest him, and then "either to release that person on his own recognizance or to take that person into custody. . . ." State v.Wilkins, 240 Conn. 498-499 (1997), citing General Statutes §14-140 (a). See also State v. Lamme, supra, 216 Conn. 172, 176
(1990)[6]
In this matter, Scavotto observed multiple acts by the CT Page 11518 defendant which could reasonably and objectively have been found to constitute violations of the motor vehicle laws of this state. General Statutes § 14-230 requires operation of a motor vehicle upon the right side of the highway, except in specified circumstances such as for purposes of passing "parked vehicles., or obstructions on the right side of the highway." General Statutes § 14-235 generally prohibits driving a motor vehicle on the left side of a highway when upon a curve. General Statutes § 14-241 establishes that "[a]t any intersection where traffic is permitted to move in both directions on each highway entering the intersection, an approach for a left turn shall be made in that portion of the right half of the highway nearest the center line thereof and by passing to the right of such center line where it enters the intersection, and after entering the intersection the left turn shall be made so as to leave the intersection to the right of the center line of the highway being entered. Although the defendant was apparently not charged with violation of these provisions, his operation of the black automobile, through making a left turn onto Bridge Street and operating in the westbound lane could reasonably be interpreted as conduct in abrogation of General Statutes § 14-230, §14-235, and § 14-241. General Statutes § 14-222 prohibits reckless operation of a motor vehicle upon a public highway. Although the defendant was apparently not charged with reckless driving, his operation of the black automobile, in imprudent proximity to a parked tractor trailer truck, with sudden swerving away from that vehicle, could reasonably be interpreted as conduct in violation of General Statutes § 14-222. General Statutes § 14-236 requires that when upon a multiple-lane highway, a vehicle must be driven as nearly as practicable entirely within a single lane. The defendant's operation of his vehicle by straddling two travel lanes of I-91 could reasonably be interpreted as conduct in violation of § 14-236; in fact, this charged was lodged against the defendant at the scene.
Under the circumstances of this case, the evidence thus supports the court's finding that Lynch had a particularized, objective, articulable and articulated basis to conclude that the defendant had been involved in the motor vehicle offenses previously described.[7] The traffic stop was made pursuant to applicable principles of due process of law.
WHEREFORE, the defendant's motion to dismiss is hereby DENIED. CT Page 11519
BY THE COURT, N. Rubinow, J.