*21
 
 OPINION OF THE COURT
 

 Titone, J.
 

 In recent years, law enforcement officers have increasingly turned to specially trained dogs to assist them in their efforts in the "war against drugs.” The present appeal raises the question of whether the use of these "canine cannabis connoisseurs” — as they have been termed
 
 [1]
 
 — to detect the presence of controlled substances in a person’s apartment is subject to the strictures of the Fourth Amendment of the Federal Constitution or article I, § 12 of the New York State Constitution. For the reasons that follow, we conclude that while the use of such dogs does not implicate the protections of the Fourth Amendment, our State Constitution requires that the police have at least a reasonable suspicion that a residence contains illicit contraband before this investigative technique may be employed.
 

 I
 

 In May of 1988, prompted by information that controlled substances were being kept in an apartment leased by defendant in Hamburg, New York, the police arranged to have a trained narcotics detection dog brought to the common hallway outside his apartment door so that a "canine sniff” could be conducted.
 
 [2]
 
 Upon its arrival, the dog "alerted,” indicating the presence of drugs inside the apartment. Based on the dog’s reaction, as well as their prior information, the police obtained a warrant to search the apartment. This search re-
 
 *22
 
 suited in the seizure of large quantities of cocaine and marihuana, various items of drug paraphernalia and two handguns. Relying in part on the success of that search, the police then obtained a second warrant to search another of defendant’s apartments, this one located in Cheektowaga, New York. That search also resulted in the seizure of cocaine and marihuana, as well as additional items of drug paraphernalia.
 

 A nine-count indictment was subsequently returned against defendant charging him with, among other things, various drug-related offenses. Prior to trial, defendant moved to suppress all of the items of evidence which had been seized during the two searches. In support of his motion, defendant argued that the search warrants in question had been improperly issued insofar as they were based on the result of the "canine sniff” conducted outside his apartment door, which he asserted itself constituted an unlawful warrantless search unsupported by probable cause. Defendant’s motion was denied, and he was subsequently convicted after a jury trial.
 

 On appeal, the Appellate Division affirmed. A two-Justice plurality declined to hold the "canine sniff” in question to be a search within the meaning of either the Federal or our State Constitution. Although the plurality’s holding obviated the need to determine if the police had any basis for subjecting defendant’s apartment to this investigative device, they nevertheless noted that a reasonable suspicion did exist. Justice Lawton, although concurring with the plurality’s holding that the "canine sniff” was not unlawful, disagreed that it did not constitute a search. He, however, believed that such a procedure, since it was minimally intrusive, needed to be supported only by a reasonable suspicion, which he, like the plurality, found to exist. The dissent, on the other hand, focusing on the sanctity of the home, thought that both a warrant and probable cause should be required. A Justice of the Appellate Division granted defendant leave to appeal to this Court. We now affirm, but solely on the ground that the police had a reasonable suspicion that defendant’s apartment contained illicit contraband.
 

 II
 

 We first turn to defendant’s contention that his rights under the Federal Constitution were violated. Our analysis here must begin with an examination of
 
 United States v Place
 
 (462 US 696). There, the Supreme Court addressed the issue of
 
 *23
 
 whether the exposure of a person’s luggage, while at an airport, to a specially trained narcotics detection dog constituted a search within the meaning of the Fourth Amendment. In holding this investigative method not to be a search, the court primarily focused on its discriminate and nonintrusive character, particularly the extremely limited nature of the information revealed by such a procedure. As Justice O’Con-nor, writing for the majority, stated: "A 'canine sniff by a well-trained narcotics detection dog * * * does not expose noncontraband items that otherwise would remain hidden from public view, as does, for example, an officer’s rummaging through the contents of [a person’s] luggage. Thus, the manner in which information is obtained through this investigative technique is much less intrusive than a typical search. Moreover, the sniff discloses only the presence or absence of narcotics, a contraband item. Thus, despite the fact that the sniff tells the authorities something about the contents of the luggage, the information obtained is limited.” (462 US, at 707;
 
 see also, United States v Jacobsen,
 
 466 US 109, 123 ["governmental conduct that can reveal whether a substance is cocaine, and no other arguably 'private’ fact, compromises no legitimate privacy interest”, and thus, does not constitute a search within the meaning of the Fourth Amendment].)
 

 In light of the rationale adopted by the Supreme Court in
 
 Place,
 
 and reaffirmed in
 
 Jacobsen,
 
 we reject defendant’s contention that his Federal constitutional rights were violated. Since the "canine sniff’ conducted outside his apartment could reveal only the presence or absence of illicit drugs, it did not constitute a search within the meaning of the Fourth Amendment. Although the Second Circuit, in
 
 United States v Thomas
 
 (757 F2d 1359 [2d Cir],
 
 cert denied sub nom. Wheelings v United States,
 
 474 US 819), held
 
 Place
 
 inapplicable to "residential sniffs,” we find its attempt to distinguish that case unpersuasive
 
 (see, United States v Colyer, 878
 
 F2d 469, 475 [DC Cir] [questioning the correctness of the
 
 Thomas
 
 decision]). The distinction it relies upon, namely, the heightened expectation of privacy that a person has in his residence, is irrelevant under
 
 Place’s
 
 rationale
 
 (see, United States v Jacobsen, supra,
 
 at 140 [Brennan, J., dissenting];
 
 cf., People v Price,
 
 54 NY2d 557, 563). Whether or not there exists a heightened expectation of privacy, the fact remains that a "canine sniff’ reveals only evidence of criminality
 
 (see, United States v Place, supra,
 
 at 707;
 
 see also, United States v Jacobsen, supra,
 
 at 122-124). Since that was the factor that was
 
 *24
 
 determinative in
 
 Place,
 
 we conclude that its holding is controlling even where the target of the “canine sniff” is a residence.
 

 Ill
 

 Having determined that defendant’s rights under the Federal Constitution (US Const 4th Amend) were not violated, we now turn to the question of whether our State Constitution provides greater protections (NY Const, art I, § 12).
 
 [3]
 
 Initially, we note that our decision in
 
 People v Price
 
 (54 NY2d 557,
 
 supra)
 
 is not dispositive of this issue.
 
 Price,
 
 like the Supreme Court’s decision in
 
 Place,
 
 involved the exposure of a person’s luggage, located at an airport, to a trained canine’s nose. However, in declining to find that particular procedure to be a search under our State Constitution, we, unlike the
 
 Place
 
 court, primarily focused on the reduced expectation of privacy that a person has with regard to the luggage he places in the hands of a common carrier (54 NY2d, at 563). Nowhere in
 
 Price
 
 did we even intimate that the investigative tool employed there did not constitute a search because it could disclose only the presence or absence of contraband.
 

 We now must decide whether we should adopt the
 
 Place
 
 rationale as a matter of State constitutional law. At the outset, we note that in the past this Court has not hesitated to interpret article I, § 12 independently of its Federal counterpart when the analysis adopted by the Supreme Court in a given area has threatened to undercut the right of our citizens to be free from unreasonable government intrusions
 
 (see, People v P. J. Video,
 
 68 NY2d 296,
 
 on remand from New York v P. J. Video,
 
 475 US 868;
 
 People v Class,
 
 67 NY2d 431,
 
 on remand from New York v Class,
 
 475 US 106;
 
 People v Bigelow,
 
 66 NY2d 417;
 
 People v Johnson,
 
 66 NY2d 398;
 
 People v Gokey,
 
 60 NY2d 309). Because we conclude that the
 
 Place
 
 analysis does just that, we decline to follow it.
 

 Unlike the Supreme Court, we believe that the fact that a given investigative procedure can disclose only evidence of criminality should have little bearing on whether it constitutes a search. Notwithstanding such a method’s discriminate
 
 *25
 
 and nonintrusive nature, it remains a way of detecting the contents of a private place
 
 (see, United States v Jacobsen, supra,
 
 at 140-141 [Brennan, J., dissenting];
 
 United States v Thomas, supra,
 
 at 1366-1367;
 
 see also,
 
 Gutterman,
 
 A Formulation of the Value and Means Models of the Fourth Amendment in the Age of Technologically Enhanced Surveillance,
 
 39 Syracuse L Rev 647, 707-711 [1988]). Thus, our analysis should more appropriately focus on whether there has been an intrusion into an area where an individual has a reasonable expectation of privacy.
 
 [4]
 
 Once our inquiry is so directed, it becomes clear that the use of the trained canine outside defendant’s apartment constituted a search. By resorting to this investigative technique, the police were able to obtain information regarding the contents of a place that has traditionally been accorded a heightened expectation of privacy
 
 (see, People v Levan,
 
 62 NY2d 139, 144 [citing
 
 Payton v New York,
 
 445 US 573]). While it is true that the canine only sniffed the air outside defendant’s apartment, that fact is not dispositive. Indeed, the odors emanating from the premises were not unlike the sound waves which were harnessed by the electronic surveillance equipment in
 
 Katz v United States
 
 (389 US 347). Each originated "inside a private area and traveled] beyond its perimeters”
 
 (People v Price, supra,
 
 at 565 [Meyer, J., concurring]), unexposed to all except those with supersensitive detection devices
 
 (see,
 
 1 LaFave, Search and Seizure § 2.2 [f], at 367-368 [2d ed]).
 
 [5]
 

 Thus, we conclude that the "canine sniff” in question here was a search within the meaning of article I, § 12 of our State Constitution. To hold otherwise, we believe would raise the specter of the police roaming indiscriminately through the corridors of public housing projects with trained dogs in search of drugs
 
 (see, People v Dunn,
 
 155 AD2d 75, 90 [Lawton, J., concurring];
 
 United States v Jacobsen, supra,
 
 at 138 [Bren
 
 *26
 
 nan, J., dissenting]). Such an Orwellian notion would be repugnant under our State Constitution
 
 (see, People v Belton,
 
 55 NY2d 49, 52,
 
 on remand from New York v Belton,
 
 453 US 454 ["(T)he State Constitution protects the privacy interests of the people of our State * * * against the
 
 unfettered discretion
 
 of government officials to search or seize.” (Emphasis supplied.)]).
 

 Our conclusion that there was a search, however, does not end the inquiry. As Justice Lawton noted in his concurrence below, a "canine sniff’ is far less intrusive than a full-blown search of a person’s home (155 AD2d, at 90-92 [Lawton, J., concurring]). It does not entail entry into the premises or exposure of one’s personal effects to the police. Given the uniquely discriminate and nonintrusive nature of such an investigative device, as well as its significant utility to law enforcement authorities, we conclude that it may be used without a warrant or probable cause, provided that the police have a reasonable suspicion that a residence contains illicit contraband
 
 (see, People v Class,
 
 63 NY2d 491, 495,
 
 revd New York v Class,
 
 475 US 106,
 
 on remand
 
 67 NY2d 431,
 
 supra
 
 [noting that since a vehicle identification number inspection is a lesser invasion than a full-blown search a lesser justification than probable cause may be required];
 
 People v Cantor,
 
 36 NY2d 106; 1 LaFave, Search and Seizure § 2.2 [f], at 375 [2d ed];
 
 see also, New Jersey v T.L.O.,
 
 469 US 325, 340-341;
 
 Terry v Ohio,
 
 392 US 1).
 

 Here it is undisputed that law enforcement authorities had a reasonable suspicion that defendant’s apartment contained illegal drugs. Since this was a sufficient justification for the police, while lawfully in the common hallway outside the apartment, to conduct a "canine sniff,” defendant’s rights under article I, § 12 of our State Constitution were not infringed.
 

 Accordingly, the order of the Appellate Division should be affirmed.
 

 Chief Judge Wachtler and Judges Kaye, Alexander and Hancock, Jr., concur with Judge Titone; Judges Simons and Bellacosa concur in result for the reasons stated in the opinion by Justice M. Dolores Denman at the Appellate Division (155 AD2d 75), and stress that in their view the sniff by a
 
 *27
 
 trained police dog in the hallway outside defendant’s apartment did not constitute a search within the meaning of the Fourth Amendment of the US Constitution or NY Constitution, article I, § 12.
 

 Order affirmed.
 

 [1]
 

 . LaFave, Search and Seizure § 2.2 (f), at 367 (2d ed).
 

 [2]
 

 . By not having timely raised below the question of whether the police were lawfully in the common hallway outside his apartment when the "canine sniff” was conducted, defendant has failed to preserve this issue for our review.
 

 [3]
 

 . Article I, § 12, like the Fourth Amendment, provides, in pertinent part: "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.”
 

 [4]
 

 . As stated by the court in
 
 United States v Thomas
 
 (757 F2d 1359, 1366): "It is one thing to say that a sniff in an airport is not a search, but quite another to say that a sniff can
 
 never
 
 be a search. The question always to be asked is whether the use of a trained dog intrudes on a legitimate expectation of privacy.” Although, as noted earlier, we find the
 
 Thomas
 
 court’s holding to be wrong as a matter of Federal constitutional law, we nevertheless find much of its analysis to be persuasive in interpreting our State Constitution.
 

 [5]
 

 . The "use of [the] dog [was] not a mere improvement of [the officer’s] sense of smell, as ordinary eyeglasses improve vision, but [was] a significant enhancement accomplished by a different, and far superior, sensory instrument.”
 
 (United States v Thomas,
 
 757 F2d 1359,1367.)