Motion for Rehearing Overruled, Affirmed in part, Dismissed in part, and
Opinion filed September 5, 2002















Motion for
Rehearing Overruled, Affirmed in part, Dismissed in part, and Opinion filed September 5, 2002.

 

 

In The

 

Fourteenth Court of Appeals

_______________

 

Nos.

14-01-00177-CR

14-01-00178-CR

14-01-00179-CR

_______________

 

HUBERT RAY
PORTER, JR., Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

___________________________________________________

 

On Appeal from 177th District Court

Harris County, Texas

Trial Court Cause Nos. 807627,
805407, and 854498

___________________________________________________

 

O P I N I O
N   O N  
M O T I O N

F O R   R E H E A R I N G

 

            Appellant’s motion for rehearing is
overruled, the opinion issued in this case on May 23, 2002, is withdrawn, and the following
opinion is issued in its place.

            Hubert Ray Porter, Jr. appeals three
theft convictions on the ground that the trial court erred in denying his
motion to suppress in each case because the affidavit supporting the search
warrant used to collect the challenged evidence contained information that was
illegally obtained, but omitted 
information that would have made that illegality evident.  We affirm in part and dismiss in part.

 

Background

            In 1999, appellant pleaded guilty to
two state jail felony thefts, in cause numbers 805407 (14-01-00178-CR) and
807627 (14-01-00177-CR) (the “original offenses”).  The trial court accepted the pleas and placed
him on deferred adjudication community supervision for four years.  Appellant did not appeal those judgments.[1]

            In 2000, while still on community
supervision for the original offenses, appellant was charged with a state jail
felony theft of lawn equipment (the “subsequent offense”) in cause number
854498 (14-01-00179-CR).  The State filed
a motion to adjudicate guilt on the original offenses based on appellant’s
violations of the community supervision conditions by: (a) committing the
subsequent offense plus misdemeanor offenses of marijuana possession and tire
theft; and (b) failing to notify his community supervision officer of changes
in his employment and residence addresses.

            Appellant filed an identical motion
to suppress (the “motion to suppress”) in the original offenses and subsequent
offense.  In a single proceeding, all
three motions were heard together, each was denied, the trial court heard
evidence on adjudication of guilt in the original offenses and guilt of the subsequent
offense, and it convicted appellant of all three.  For each of the three offenses, the trial
court sentenced him to two years confinement with all three sentences to run
concurrently.

            On appeal, appellant’s three points
of error challenge the denial of his motion to suppress because the affidavit
(the “affidavit”) given in support of the search warrant pertaining to the
subsequent offense contained information that was illegally obtained and
omitted information which would have made the illegality evident.  Appellant contends that if the motion to
suppress had been granted, there would have been no evidence of the subsequent
offense or the other offenses alleged in the motions to adjudicate guilt and
thus no adjudication of guilt of the original offenses or conviction of the
subsequent offense.

Jurisdiction

            No
appeal may be taken from a determination by a trial court of whether to proceed
with an adjudication of guilt on the original charge due to a violation of a
condition of community supervision.  Tex. Code Crim.
Proc. Ann. art. 42.12 § 5(b) (Vernon Supp.
2002).  Thus, a defendant on deferred
adjudication who is adjudicated guilty of the original charge may not raise on
appeal contentions of error in the adjudication of guilt process.  Connolly
v. State, 983 S.W.2d 738, 741 (Tex. Crim. App.
1999).  This includes assertions that
evidence used at the adjudication hearing was illegally obtained.  See
Holder v. State, 618 S.W.2d 80, 81 (Tex. Crim.
App. [Panel Op.] 1981).

            In this case, because appellant may
not appeal the trial court’s adjudication of guilt on the original offenses, we
may not address appellant’s first and second points of error, challenging the
denial of the motion to suppress in those cases.  Accordingly, those points of error, and the
appeals of those convictions, are dismissed.[2]  We thus turn to appellant’s third point of
error, challenging the denial as to the subsequent offense.

Validity of Affidavit

                                                             Standard of Review

            In a motion to suppress hearing, the
trial court is the sole trier of fact and may choose
to believe or disbelieve any or all of a witness’s testimony, even if it is uncontroverted.  State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). 
Accordingly, in reviewing a ruling on a search or seizure issue, we give
almost total deference to a trial court’s determinations that turn on an
evaluation of credibility and demeanor and review de novo application of
law to fact questions that do not turn on an evaluation of credibility and
demeanor.  Johnson v. State, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002).  In
so doing, we examine the evidence in the light most favorable to the trial
court’s ruling, and, where findings of fact have not been filed, we assume the
court made implicit findings of fact that support its ruling to the extent the
record supports them.  Roquemore v. State,
60 S.W.3d 862, 866 (Tex. Crim. App. 2001).

                                                            Entry onto Property

            Appellant first challenges the
validity of the affidavit on the ground that information reflected in it and
necessary to establish probable cause was illegally obtained by officers’ entry
onto appellant’s property (the “property”) through a closed gate in the fence
surrounding it.  Appellant claims that
this entry was illegal because it was made without a warrant, consent, or
exigency, and, even if pursuant to a warrant, in violation of article 15.25 of
the Texas Code of Criminal Procedure.[3]

            Absent express orders from a person
in possession of property not to trespass, a police officer is not prevented
from approaching the front door of a residence.   See Cornealius v. State, 900 S.W.2d 731 (Tex. Crim. App. 1995).  In
this case, appellant cites no evidence of a sign prohibiting entry onto the
property or that the gate was locked, but only that it was a motorized gate,
operated by remote control, which the officers instead pushed open.

            At least one Texas court has
held that unlatching an ordinary latch on a closed, but unlocked, gate to
approach the front door of a house is not an illegal entry by police.  See Nored v. State, 875 S.W.2d 392, 396-97 (Tex.
App.—Dallas 1994, pet. ref’d).  In terms of the degree to which it signifies
an intent to exclude the public, a remote control gate is somewhere between a
locked gate or sign prohibiting entry and a gate closed with an ordinary latch,
and is thus somewhat ambiguous.  Although
a remote control mechanism on a gate can support an inference that it is
intended to prevent the gate from being opened otherwise and to thereby exclude
the public, it can also reasonably support an inference that it is merely
intended to hold the gate shut, like an ordinary gate latch, while also
allowing it to be opened by remote control when convenient.  Based on the latter inference, it would not
have been an abuse of discretion for the trial court to conclude that the
officers pushing the gate open to approach the front door was not an illegal
entry.

            In addition, the conditions of
appellant’s deferred adjudication community supervision  (the “conditions”) ordered, among other
things, that he permit his community supervision officer to visit him at his
home,[4] and
that he must notify the Harris County Community Supervision and Corrections
Department of any change of residence within 48 hours of the change.  Appellant does not challenge the validity of
these conditions.

            The condition that appellant permit
a community supervision officer to visit him at his home logically necessitated
that such an officer have access to reach the front door of appellant’s home
(or another location from which he could give notice of his intent to have a
visit).  In this case, there was evidence
that appellant had changed his residence to the property without notifying the
department and that the officers who entered the property included probation
officers who were making a home visit to determine whether appellant was
residing there.  Under these
circumstances, we believe that pushing the gate open to approach the front door
was reasonably within the scope of what the conditions allowed the officers to
do.[5]  Therefore, we overrule appellant’s contention
that the officers’ entry through the closed gate was unlawful.

                                                                      Dog Sniff

            Appellant next contends that the dog
sniff outside his front door, which alerted the officers to the presence of a
controlled substance inside his house, was itself an illegal search.  For Fourth Amendment purposes, a “search”
does not occur, even when the explicitly protected area of a house is
concerned, unless a reasonable expectation of privacy exists in the object of
the challenged search.  Kyllo v. United States, 121 S. Ct. 2038,
2042-43 (2001).[6] An
individual has no reasonable expectation of privacy in possessing illegal
drugs.  See United States v. Jacobsen, 466 U.S. 109, 123
(1984).  Therefore, a government
investigative technique, such as a dog sniff or chemical test, that discloses
only the presence or absence of narcotics, and does not expose noncontraband items, activity, or information that would
otherwise remain hidden from public view, does not intrude on a legitimate
expectation of privacy and is thus not a “search” for Fourth Amendment
purposes.  See City of Indianapolis v. Edmond, 121 S. Ct. 447, 453
(2000); Jacobsen, 466 U.S. at 122-24;
United
 States v. Place, 462 U.S. 696,
706-07 (1983).[7]  Because the dog sniff in this case was such
an investigative method, it was not a search and thus not an illegal one.

            Finally, appellant contends that the
search was invalidated by the omission from the affidavit of  facts showing that the officers illegally
obtained the information reflected in the affidavit.  However, because appellant has not
demonstrated that any of the information in the affidavit was illegally
obtained, we have no basis to conclude that the affidavit and warrant were
invalid for either including the information obtained or for excluding information
showing how it was obtained. 
Accordingly, appellant’s third point of error is overruled, and the
judgment of the trial court is affirmed as to cause number 14-01-00179-CR.  As noted above, the appeals in cause numbers
14-01-00177-CR and 14-01-00178-CR are dismissed.

 

                                                                                    

                                                                        /s/        Richard H. Edelman

                                                                                    Justice

 

Judgment rendered and Opinion filed
September 5, 2002.

Panel consists of Justices Yates,
Edelman, and Wittig.[8]
(Senior Justice Wittig concurs in result only).

Publish — Tex. R. App. P. 47.3(b).

 

 











[1]           A defendant placed on deferred
adjudication community supervision may raise issues relating to the original
plea proceeding only in appeals taken when deferred adjudication community
supervision is first imposed.  Manuel v. State, 994 S.W.2d 658, 661-62
(Tex. Crim. App. 1999).





[2]           See Reagan
v. State, 832 S.W.2d 125, 127 (Tex. App.—Houston [1st Dist.] 1992, no
pet.); Wienbrink
v. State, 825 S.W.2d 259, 260 (Tex.
App.—Houston [1st Dist.] 1992, no pet.). 
The State’s motions to dismiss the appeals in cause numbers
14-01-00177-CR and 14-01-00178-CR are thus granted.





[3]           See Tex. Code Crim.
Proc. Ann. art. 15.25 (Vernon 1997) (in a felony case, an officer may
break down the door of any house for the purpose of making an arrest, if he be
refused admittance after giving notice of his authority and purpose).  Although acknowledging that a violation of
article 15.25 does not render a resulting arrest invalid, appellant contends,
by analogy to the curtilage concept under Fourth
Amendment law, that entry through the front gate of a yard should be analyzed
as if it were through the front door of a home, such that an entry through a
gate without notice causes officers to be on the premises illegally.  Appellant cites no authority extending
article 15.25 to the gate of a yard (as contrasted from the door of a house),
and the Court of Criminal Appeals has overruled a challenge to the
admissibility of evidence based on a violation of article 15.25.  See
Jones v. State, 568 S.W.2d 847, 857-58 (Tex. Crim.
App. 1978).  Therefore, we overrule the
portion of appellant’s challenge based on article 15.25.





[4]           See Tex. Code Crim.
Proc. Ann. art. 42.12, § 11(a)(5) (Vernon Supp. 2002) (including this as
a permissible condition of community supervision).





[5]           This is not to suggest that the
conditions authorized officers to use any means necessary to gain access to
appellant’s front door, but only that pushing the gate open was within the
scope of what we believe the conditions reasonably did allow.  It is well recognized that the State’s need
to supervise parolees and probationers allows their liberty and privacy to be
impinged more than those of the public at large.  See,
e.g., Griffin v. Wisconsin, 483 U.S. 868,
874-75 (1987).  Although it is arguable
that a similar rationale applies to defendants on deferred adjudication
community supervision, that issue need not be addressed in this case because we
conclude that the officers’ actions were permitted by the conditions, the
validity of which has not been challenged.





[6]           In this context, we understand the
term, “object of the search,” to include not only the items searched for but
also the areas or aspects of a location that are searched.  Therefore, the referenced portion of Kyllo does not
mean that the presence of illegal items in a home lessens the expectation of
privacy there so as to allow it to be searched without a warrant, but only that
an investigative method that can only detect the existence of illegal items in
a home, and does not intrude on any other areas or aspects of it, is not a
search for Fourth Amendment purposes.





[7]           See also
United States v. Tarazon-Silva, 960 F.
Supp. 1152, 1162-63 (W.D. Tex. 1997) (holding that dog sniff of dryer vent of
house was not a search), aff’d,
166 F.2d 341 (5th Cir. 1998);  People v. Dunn, 564 N.E.2d 1054, 1056-57
(N.Y. 1990) (holding that canine sniff outside an apartment was not a search), cert. denied, 501 U.S. 1219
(1991).  But see United States v.
Thomas, 757 F.2d 1359, 1366-67 (2d Cir. 1985) (holding that dog sniff at
door of apartment constituted search), cert.
denied, 474 U.S. 819 (1985), and
cert. denied, 479 U.S. 818 (1986); State
v. Ortiz, 600 N.W.2d 805, 819-20 (Neb. 1999)
(holding that dog sniff in hallway outside apartment was a search).  A dog sniff is also not a search for purposes
of Article I, Section 9 of the Texas Constitution.  Josey v. State,
981 S.W.2d 831, 845 (Tex. App.—Houston [14th Dist.] 1998, pet. ref’d).  By contrast,
the use of a thermal imaging device to record the heat being emitted from
within a home is a “search” because it can reveal information about legal
activity inside the home as to which individuals have a legitimate expectation
of privacy.  See Kyllo, 121 S. Ct. at
2043-46.





[8]           Senior Justice Don Wittig sitting
by assignment.