Opinion issued March 27, 2003 










     





In The
Court of Appeals
For The
First District of Texas




NOS. 01-01-01082-CR
          01-02-00050-CR




ANTONIO O. RODRIGUEZ, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 230th District Court
Harris County, Texas
Trial Court Cause Nos. 873191 and 871697




O P I N I O N
          Antonio O. Rodriguez, appellant, was charged with possession with intent to
deliver at least four grams but less than 200 grams of methamphetamine


 in cause
number 873,191, and possession of more than five pounds but not more than 50
pounds of marihuana


 in cause number 871,697. The trial court found appellant
guilty and assessed punishment for each offense at six years’ confinement and a fine
of $1,000. We affirm.
Facts
          In March 2001, Crime Stoppers forwarded two telephone calls to Officer Floyd
Winkler of the Houston Police Department. The informant told Winkler about a
house where an Eric Quiroz was staying. Quiroz was driving a stolen pick-up truck. 
The informant told Winkler that he had been to the house “several times.” 
          The informant told Winkler that the house was the second house from the end
of a dead-end street and from the telephone company; it was on the right hand side
of the street; there was a brick walkway with bushes on either side; there were burglar
bars; and there was a white van frequently parked at the house. The informant also
told Winkler that the house had a television camera that could see out to the street,
with a monitor inside the house; and that there was a storage building in the back
where narcotics were stored. The owner was an unknown Hispanic man about 24
years old, 5 feet 11 inches tall, and 180 pounds, with a shaved head. The informant
told Winkler that he had seen Quiroz and the owner of the house using and selling
narcotics.
          Winkler and the informant went to the house a couple of times before obtaining
the warrant. Officer Winkler confirmed most of the informant’s information by
viewing the house, except for whether there were cameras on the outside of the house. 
There was no fencing around the front yard area; nor were there any no trespassing
signs. 
          Winkler contacted Deputy Preston Fosse, a narcotics K-9 handler. Fosse went
to the front door of the house with his dog, but without a warrant. Fosse’s dog alerted
to the odor of one of the four narcotics the dog was trained to detect (marihuana,
cocaine, methamphetamine, and heroin).
          Once the dog alerted to the front door, Winkler was notified and was able to
obtain a judge’s signature on a search warrant. Winkler gave the team members who
were at the house the go-ahead to enter.
          Upon executing the search warrant, the officers found two marihuana plants
along the sidewalk at the entrance to the house; a gun, a bag of marihuana, and a
purse on the bedroom floor with pills in it; a safe in the bedroom with $2,860 in cash;
$470 loose on the floor in the downstairs front bedroom; Swisher cigar wrappers,
often used to make marihuana cigarettes, in the kitchen; marihuana around the
Swisher boxes; several bricks of marihuana and two bags of methamphetamine in the
kitchen cupboard; scales, commonly used to weigh narcotics, in the kitchen; a bag of
marihuana and a shoe containing $6,980 found in a weight room closet; and two
pistols, an assault rifle, appellant’s picture, paperwork in appellant’s name,
appellant’s photo album, $597 in a cigar box, Zanax pills and marihuana in an
upstairs bedroom. Some of the papers indicated that appellant’s parents owned the
house and leased it to appellant. Appellant’s passport, his social security card, and
an apparent drug ledger were recovered from the kitchen. The officers also observed
a split screen television set that showed the outside through a small television camera. 
          The fortified storage building attached to the garage had a thick, fortified, and
locked door. The walls of the building were lined with styrofoam and plywood, and
the building had one vent hood on top of the garage. Inside the building were a
couch, a chair, a table, and large boxes that contained marihuana. Marihuana residue
was found in the boxes and on the table, along with a cutting knife. Two bags of
marihuana and foam sealant, commonly used to prevent drug-dogs from detecting the
odor of narcotics, were found in the building. 
          Appellant lives at the house and was found there with $2,546 on his person.Issues
          In eight points of error, appellant argues that (1) the trial court erred in
overruling his motions to suppress; (2) the trial court erred in refusing to find that a
drug-dog sniff at the front door of a home is a “search” requiring a previously-issued
warrant to be legitimate; (3) the drug-dog’s alert at his closed and locked door was
the result of a warrantless search that violated his Fourth Amendment right to be
secure from unreasonable searches and seizures; (4) the drug-dog’s alert at his closed
and locked door was the result of a warrantless search that violated his state right
against unreasonable searches and seizures under Article 1, § 9 of the Texas
Constitution; (5) use of the illegally obtained drug-dog alert to get a warrant violated
his Fourth Amendment rights; (6) use of the illegally obtained drug-dog alert to
obtain a warrant violated his state rights under Article 1, § 9 of the Texas
Constitution; (7) use of the illegally obtained drug-dog alert to obtain a warrant
violated Article 38.23 of the Texas Code of Criminal Procedure;


 and (8) the search
warrant affidavit, once redacted of all reference to the drug-dog alert, did not state
probable cause. 
Discussion
Motion to Suppress
          Appellant has not provided any argument regarding why the trial court erred
in overruling his motions to suppress; therefore that argument has been waived.



Search and Seizure
          Appellant has briefed his remaining seven points of error together; therefore,
we will address them together.



          All of appellant’s remaining points of error depend on whether the drug-dog’s
“sniff” was a “search.” Appellant argues that the drug-dog’s sniff outside his front
door, which alerted the officers to the presence of a controlled substance inside his
house, was an illegal search and that the State, therefore, obtained a search warrant
based on an illegal search. We address both contentions.
          Expectation of Privacy 
          It is well settled in this country that the Fourth Amendment provides significant
protection to homes and the areas immediately attached to and surrounding them.
United States v. Tarazon-Silva, 960 F. Supp. 1152, 1162 (W.D. Tex. 1997), aff’d, 166
F.3d 341 (5th Cir.1998). Those areas immediately attached to and surrounding a
home are referred to as the “curtilage,” which is a valuable concept for use in
determining the “reach” of the Fourth Amendment. Id. The Supreme Court of the
United States has set out four factors to consider when determining the curtilage: (1)
the proximity of the area to the home; (2) whether the area is included within an
enclosure surrounding the home; (3) the nature of the uses to which the area is put;
and (4) the steps taken to protect the area from the observations of passersby. Id.
(citing United States v. Dunn, 480 U.S. 294, 301, 107 S. Ct. 1134, 1139 (1987)). 
Areas around a home that are readily accessible, such as driveways and outside an
apartment door, are not accorded the same degree of Fourth Amendment protection
as is the interior of a residence. See Tarazon-Silva, 960 F. Supp. at 1163; People v.
Dunn, 564 N.E.2d 1054, 1055-57 (N.Y. 1990), cert. denied, 501 U.S. 1219, 111 S.
Ct. 2830 (1991). 
          We hold that appellant did not have a reasonable expectation of privacy outside
his home where the drug-dog sniffed because the front door area was not enclosed,
it was used as the main entrance to the house, and it was not protected from
observation by passersby. See Tarazon-Silva, 960 F. Supp. at 1162-63 (holding that
dog sniff of dryer vent of house located near the driveway was not a search); Dunn,
564 N.E.2d at 1056-57 (holding that canine sniff outside an apartment was not a
search); Wilson v. State, No. 01-01-00713-CR, slip op. at 13 (Tex. App.—Houston
[1st Dist.] Dec. 31, 2002, no pet.) (holding defendant had no expectation of privacy
in the area exterior to the door of his hotel room).
          Appellant also argues that the use of a drug-dog sniff to detect narcotics is “an
investigative technique that seeks to remotely observe that which an officer could
physically observe only by being inside a house.” In making this argument, appellant
relies on Kyllo v. United States, 533 U.S. 27, 34-35, 121 S. Ct. 2038, 2043 (2001). 
However, his reliance on Kyllo and his characterization of the use of a drug-dog as
an investigative technique that seeks to remotely observe that which could physically
be observed only from inside a house are flawed. 
          A “search” does not occur, for Fourth Amendment purposes, even when the
explicitly protected area of a house is concerned, unless a reasonable expectation of
privacy exists in the object of the challenged search. See Kyllo, 533 U.S. at 33;
Porter v. State, 93 S.W.3d 342, 346 (Tex. App.—Houston [14th Dist.] 2002) (citing
Kyllo). There is no legitimate expectation or interest in “privately” possessing an
illegal narcotic. Wilson, No. 01-01-00713-CR, slip op. at 13; see also United States
v. Jacobsen, 466 U.S. 109, 122-124 104 S. Ct. 1652, 1661-62 (1984) (holding that
there was no justifiable expectation of privacy when officers seized a package
believed to contain cocaine); United States v. Place, 462 U.S. 696, 706-07, 103 S. Ct.
2637, 2644-45 (1983) (holding that a “canine sniff” to determine whether luggage
contained narcotics did not intrude upon any legitimate expectation of privacy). An
investigative method that can only detect the existence of illegal items in a home and
does not reveal legal information about the interior of a home, is not a search for
Fourth Amendment purposes. See Porter, 93 S.W.3d at 346, n.6 (interpreting Kyllo,
533 U.S. at 31-34, 121 S. Ct. at 2042-43); Wilson, No. 01-01-00713-CR, slip op. at
12-13. Therefore, a government investigative technique, such as a drug-dog sniff,
that discloses only the presence or absence of narcotics, and does not expose
noncontraband items, activity, or information that would otherwise remain hidden
from public view, does not intrude on a legitimate expectation of privacy and is thus
not a “search” for Fourth Amendment purposes. Porter, 93 S.W.3d at 346.


 
          By contrast, the use of a thermal imaging device to record the heat being
emitted from within a home—the issue in Kyllo—is a “search” because it can reveal
information, other than the presence of contraband, about the interior of a home.
Wilson, No. 01-01-00713-CR, slip op. at 13 (citing Kyllo, 533 U.S. at 38, 121 S. Ct.
at 2045). 
          The dog’s sniff in this case did not explore the details of the house; nor could
the sniff reveal anything about the house other than the presence of an illegal
narcotic.  See id. Because the drug-dog sniff in this case did not intrude on a
legitimate expectation of privacy, it was not a search and thus not an illegal one. 
Porter, 93 S.W.3d at 347.
          Probable Cause to Search
          Appellant also contends that the drug-dog sniff did not constitute probable
cause to obtain a search warrant and, therefore, the search of his house was illegal. 
Whether the facts alleged in a probable cause affidavit sufficiently support a search
warrant is determined by examining the totality of the circumstances. Ramos v. State,
31 S.W.3d 762, 764-65 (Tex. App.—Houston [1st Dist.] 2000, no pet.). The
allegations are sufficient if they justify a conclusion that the object of the search is
probably on the premises. Id. When a trained and certified narcotics dog alerts an
officer to apparent evidence or contraband, probable cause exists. See Wilson, No.
01-01-00713-CR, slip op. at 11-12; see also Harrison v. State, 7 S.W.3d 309, 311
(Tex. App.—Houston [1st Dist.] 1999, pet. ref’d) (stating that “[t]he smell of burnt
marihuana by a trained officer provides . . . probable cause” and that “when a trained
and certified narcotics dog alerts . . . to . . . contraband, probable cause exists”). We
hold that the drug-dog sniff constituted probable cause to obtain a warrant. 
          We hold that the use of a drug-dog to sniff for narcotics outside appellant’s
house was not a “search,” and therefore there was no need for a previously-issued
warrant for the sniff; the sniff did not violate the Fourth Amendment to the United
States Constitution or Article I, § 9 of the Texas Constitution; use of the sniff to
obtain a warrant did not violate the Fourth Amendment, Article I, § 9 of the Texas
Constitution. Because neither the sniff nor its use to obtain a warrant violated the
federal or state constitution, the sniff did not violate Article 38.23 of the Texas Code
of Criminal Procedure.



          We overrule appellant’s seven remaining points of error.
Conclusion
          We affirm the judgment of the trial court.

                                                             Evelyn V. Keyes
                                                             Justice
 
Panel consists of Justices Taft, Keyes, and Higley.
Publish. Tex. R. App. P. 47.4.