RUCKER, Justice,
dissenting.
The United States Supreme Court has determined that under limited cireum-stances a sniff test by a trained narcotics dog is not a search within the meaning of Fourth Amendment. City of Indianapolis v. Edmond, 531 U.S. 32, 40, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000) ("A sniff by a dog that simply walks around a car is much less intrusive than a typical search."); United States v. Place, 462 U.S. 696, 706-07, 108 S.Ct. 2637, 77 L.Ed.2d 110 (1983) (The exposure of the defendant's luggage "to a trained canine did not constitute a 'search' within the meaning of the Fourth Amendment."). And there is authority for the proposition that an alert by a trained narcotics dog may be enough to establish probable cause. See, eg., Florida v. Royer, 460 U.S. 491, 505, 108 S.Ct. 1819, 75 L.Ed.2d 229 (1983) (noting disagreement among the cireuits on this issue, but commenting, "A negative result [sniff test by a *1163 trained dog] would have freed Royer in short order; a positive result would have resulted in his justifiable arrest on probable cause."); Umited States v. Brown, 24 F.3d 1223, 1226 (10th Cir.1994) ("[When the canine alerted to Brown's Lincoln, the authorities had 'probable cause' to impound the vehicle, ... and thereafter obtain ... a warrant.").
Taken together these cases seem to stand for the proposition that: (1) no warrant is required in the first instance for the use of a trained narcotics dog, and (#) onee the dog alerts to the presence of narcotics, probable cause has been established either to obtain a warrant or search pursuant to an exception. The question presented in this case however is one step removed, namely: whether something less than probable cause, ie., reasonable artic ulable suspicion of criminal activity, is required before a narcotics dog may be used to conduct a sniff test.
The majority is of the view that the recent United States Supreme Court opinion in Illinois v. Caballes, 548 U.S. 405, 125 S.Ct. 834, 160 LEd.2d 842 (2005), is dispositive of this issue. I respectfully disagree. In that case, an Illinois State Trooper stopped Roy Caballes for speeding. As the trooper radioed in the information, a second trooper, a part of a Drug Interdiction Team, overheard the transmission and arrived on the scene with a drug-sniffing dog. Id. at 836, 160 LEd.2d 842, While the first trooper was writing a warning ticket, the second trooper walked the dog around the car. The dog alerted at the trunk and the troopers opened it and found marijuana. After the trial court denied his motion to suppress, Caballes was convicted of trafficking in marijuana. Id. The Illinois Appellate Court affirmed the conviction, and the Supreme Court of Illinois reversed, holding that the drug evidence should have been suppressed. Id. at 886-87, 160 LEd.2d 842. The United States Supreme Court granted certiora-ri, but on a very limited ground. As the Court put it: "The question on which we granted certiorari ... is narrow: ''Whether the Fourth Amendment requires reasonable, articulable suspicion to justify using a drug-detection dog to sniff a vehicle during a legitimate traffic stop."" Id. at 887, 160 LEd.2d 842 (emphasis added). The narrowness of the Court's holding was emphasized at several points throughout the opinion:
In our view, conducting a dog sniff would not change the character of a traffic stop that is lawful at its inception and otherwise executed in a reasonable manner, unless the dog sniff itself infringed respondent's constitutionally protected interest in privacy.
Id. (emphasis added).
[The use of a well-trained nareoties-detection dog-one that "does not expose noncontraband items that otherwise would remain hidden from public view"-during a lawful traffic stop, generally does not implicate legitimate privacy interests. In this case, the dog sniff was performed on the exterior of respondent's car while he was lawfully seized for a traffic violation. Any intrusion on respondent's privacy expectations does not rise to the level of a constitutionally cognizable infringement.
Id. at 888, 160 LEd.2d 842 (emphases added) (citation omitted).
A dog sniff conducted during a con-cededly lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment.
Id. (emphasis added). It appears to me that the Supreme Court's emphasis on dog sniffs in the context of traffic stops was deliberate. The Court could have said, as *1164 the majority says in this case, that the dog sniff was justified solely because the car was "parked and unoceupied." Op. at 1159. But it did not. In my view the majority's position here expands the use of drug sniffing dogs to a variety of contexts not specifically sanctioned by the Caballes court. Indeed, in a dissenting opinion Justice Souter made a similar point. Although complaining that -the Court's stated reasoning "provides no apparent stopping point," Justice Souter pointed out that he did not believe the Court's was "actually signaling recognition of a broad authority to conduct suspicionless sniffs for drugs in any parked car ... or on the person of any pedestrian minding his own business on a sidewalk." Caballes, 125 S.Ct. at 842, 160 L.Ed.2d 842 (Souter, J., dissenting).
In essence, we are writing on a clean slate. Or perhaps, more precisely, Ca-balles leaves open the question of whether, in contexts other than traffic stops, the use of a drug-sniffing dog requires reasonable articulable suspicion of eriminal activity. Although apparently acknowledging that use of a drug-sniffing dog is not a search within the meaning of the Fourth Amendment, at least one federal circuit is of the view that reasonable suspicion is nonetheless required before the dog can ply its trade. See, eg., United States v. Quinn, 815 F.2d 158, 159 (Ist Cir.1987) (Holding, in the context of car parked in a driveway, "[to be entitled to use a dog for purposes of making a sniff test, the officers were required merely to have had 'reasonable suspicion' that the car contained narcotics, at the moment it was performed."); see also United States v. Place, 462 U.S. 696, 723, 103 S.Ct. 2637, 77 LEd.2d 110 (1983) ("A dog sniff may be a search, but a minimally intrusive one that could be justified in this situation under Terry upon mere reasonable suspicion.") (Blackmun, J., concurring in an opinion that held the Fourth Amendment not violated by a dog sniff of a piece of luggage that was seized, pre-sniff, based upon suspicion of drugs).[1]
Unlike the majority I am unwilling to expand the reach of Caballes beyond that which the Court itself articulated. Rather, it appears to me that the use of a dog's keen sense of smell to detect the presence of contraband within a car parked in a parking lot is a Fourth Amendment intrusion, albeit a limited one.. I would hold therefore that before an officer may subject a vehicle, lawfully parked in a parking lot, to a canine sniff, the officer must first have at least a reasonable articulable suspicion that a crime is being committed. Otherwise such an intrusion is constitutionally impermissible. Because the officer in this case had no suspicion of erimi-nal activity of any kind, the use of the drug-sniffing dog was in violation of the Fourth Amendment.
*1165 I also disagree with the majority's view that the search of Myers' vehicle was justified by the less demanding constitutional standard for searches and seizures conducted by school officials. The majority is certainly correct that T.L.O. "expressly left open the appropriate standard for determining the legality of searches 'conducted by school officials in conjunction with or at the behest of law enforcement agencies'" Op. at 1159-60 (quoting New Jersey v. T.L.O., 469 U.S. 825, 842 n. 7, 105 S.Ct. 783, 88 LEd.2d 720 (1985)). And it is also the case that, since T.L.O., courts have taken a variety of approaches in determining whether T.L.O.'s reasonable suspicion standard applies or whether probable cause is required when police are involved in searches of students in school.
Here, the majority has sided with those jurisdictions holding that where "police involvement is minimal," the T.L.O. reasonableness standard applies. First, it is my view that the police involvement in this case was far more pervasive than the majority suggests. But more importantly the majority's view is inconsistent with a key underlying tenet of the "special needs" cases. Namely, the evidence obtained was not used or intended to be used for erimi-nal law enforcement purposes.[2] This point was made clear in a fairly recent case in which the Supreme Court invalidated a state hospital policy that set forth procedures for identifying and testing pregnant patients suspected of drug use, and supplying information to police for the arrest of patients testing positive for drugs. The Court explained:
[The immediate objective of the searches was to generate evidence for law enforcement purposes .... We italicize those words lest our reasoning be misunderstood. In none of our previous special needs cases have we upheld the collection of evidence for criminal law enforcement purposes.
Ferguson v. City of Charleston, 582 U.S. 67, 88, 121 S.Ct. 1281, 149 LEd.2d 205 (2001) (emphasis in original).
None of our special needs precedents has sanctioned the routine inclusion of law enforcement .... The traditional warrant and probable-cause requirements are waived in our previous [special needs] cases on the explicit assumption that the evidence obtained in the search is not intended to be used for law enforcement purposes.
Ferguson, 582 U.S. at 88, 121 S.Ct. 1281 (Kennedy, J., concurring in result) (emphasis added); see also Bd. of Educ. v. Earls, 536 U.S. 822, 838, 122 S.Ct. 2559, 153 L.Ed.2d 735 (2002) (upholding constitutionality of school drug testing policy in part on grounds that, "the Policy clearly requires that the test results be kept in confidential files separate from a student's other educational records and ... the test results are not turned over to any law enforcement authority. Nor do the test results here lead to the imposition of discipline or have any academic consequences.").[3]
*1166 In this case, precisely because the school's drug prevention and detection policy was intended to (and did in fact) result in the seizure of evidence for law enforcement purposes, the traditional probable cause requirement was not waived. Indeed I endorse the view expressed by the Florida Court of Appeals: "where a law enforcement officer directs, participates or acquiesces in a search conducted by school officials, the officer must have probable cause for that search, even though the school officials acting alone are treated ... to a lesser constitutional standard...." A.J.M. v. State, 617 So.2d 1187, 1138 (Fla.Dist.Ct.App.1993) (reversing juvenile adjudication of delinquency where police officer seized drugs after searching student at the request of school principal) (citing M.J. v. State, 399 So.2d 996, 998 (Fla.Dist.Ct.App.1981)). See also United States v. Mekjian, 505 F.2d 1820, 1827 (5th Cir.1975) ("[Where [government] officials actively participate in a search being conducted by private parties or else stand by watching with approval as the search continues, [government] authorities are clearly implicated in the search and it must comport with fourth amendment requirements.").
In sum, I am of the opinion that the seizure of the handgun in this case cannot be justified on the grounds proposed by the majority. I therefore dissent and would reverse the trial court's denial of Myers' motion to suppress.

. Although not at issue in this case, several state courts have concluded that under their state constitutions reasonable suspicion is required for the use of drug sniffing dogs. See, eg., McGahan v. State, 807 P.2d 506, 510-11 (Alaska Ct.App.1991) (canine sniff of warehouse exterior accessible to public is state constitutional search requiring reasonable, articulable suspicion); People v. Unruh, 713 P.2d 370, 377-78 (Colo.1986), cert. denied (canine sniff of safe is state constitutional search requiring reasonable, articulable suspicion); 'State v. Pellicci, 133 NH. 523, 580 A.2d 710, 715-17 (1990) (canine sniff of vehicle's exteri- or is state constitutional search requiring reasonable, articulable suspicion}; People v. Dunn, 77 NY.2d 19, 563 NY.S.2d 388, 564 N.E.2d 1054, 1058 (1990), cert. denied (canine sniff of common hallway outside defendant's apartment door is state constitutional search requiring reasonable, articulable suspicion); Commonwealth v. Johnston, 515 Pa. 454, 530 A2d 74, 79 (1987) (canine sniff of rented storage locker is state constitutional search requiring reasonable, articulable suspicion}; Cf. Commonwealth v. Martin, 534 Pa. 136, 626 A2d 556, 560 (1993) (canine sniff of defendant's person requires probable cause).

. TLO. was not itself a so-called "special needs" case. But the doctrine has its genesis in Justice Blackmun's concurring opinion. He wrote, "[oluly in those exceptional circumstances in which special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable, is a court entitled to substitute its balancing of interests for that of the Framers." T.L.O., 469 U.S. at 351, 105 S.Ct. 733. (Blackmun, J., concurring).

. A similar rationale apparently was at the heart of this Court's majority opinion in Linke v. Northwestern School Corp., 763 N.E.2d 972 (Ind.2002). In that case the Court upheld, on Indiana Constitutional grounds, a school's policy of conducting random drug testing of certain students. In doing so the Court not *1166 ed: "Under the Policy, testing positive for banned substances does not result in academic penalty, results of drug test are not documented in any student's academic records, and information regarding the results is not disclosed to criminal or juvenile authorities absent binding legal compulsion." Id. at 975.