COPE, J.
(concurring in part and dissenting in part).
The question before us is whether, and to what extent, the Fourth Amendment is applicable when the police seek to use a drug-sniffing dog at the front door of a private home. I agree with that part of the majority opinion which holds that a warrant is not necessary for a drug-dog sniff, and agree on certifying direct conflict with the Fourth District decision in State v. Rabb, 920 So.2d 1175 (Fla. 4th DCA 2006).
I do not agree with the majority opinion’s “sniff anytime” rule. We should instead follow those courts which hold that a drug sniff is permissible at the door of a dwelling only if there is a reasonable suspicion of drug activity.
I.
The Miami-Dade County Police Department received a Crime Stoppers tip that marijuana was being grown at the home of defendant-appellee Joelis Jardines. One month later the detective went to the home at 7 a.m. He watched the home for fifteen minutes. There were no vehicles in the driveway, the blinds were closed, and there was no observable activity.
After fifteen minutes, the dog handler arrived with the drug detection dog. The handler placed the dog on a leash and accompanied the dog up to the front door of the home. The dog alerted to the scent of contraband.
The handler told the detective that the dog had a positive alert for the odor of narcotics. The detective went up to the front door for the first time, and smelled marijuana. The detective also observed that the air conditioning unit had been running constantly for fifteen minutes or so, without ever switching off.[8]
The detective prepared an affidavit and applied for a search warrant, which was issued. A search was conducted, which *11 confirmed that marijuana was being grown inside the home. The defendant was arrested.
The defendant moved to suppress the evidence seized at his home. The trial court conducted an evidentiary hearing at which the detective and the dog handler testified. The trial court suppressed the evidence on authority of State v. Rabb. The State has appealed.
II.
The Fourth Amendment protects “[t]he right of the people to be secure in their ... houses ... against unreasonable searches and seizures.... ” U.S. Const, amend. IV; Art. I, § 12, Fla. Const.
The majority opinion takes the position that constitutional protection extends only to the interior of a home, and not the front porch. However, the cases the majority relies on do not apply in the present context.
While the United States Supreme Court has “decoupled violation of a person’s Fourth Amendment rights from trespasso-ry violation of his property,” Kyllo v. United States, 533 U.S. 27, 32, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001), the law of trespass is useful by way of analogy. In an ordinary residential neighborhood, a typical home has walkway (or possibly driveway) access leading to the front porch. Although the walkway, driveway, and porch are part of the homeowner’s private property, the owner “by implication, invites others to come to his house as they may have proper occasion, either of business, or courtesy, for information, etc. Custom must determine in these cases what the limit is of the implied invitation.” Prior v. White, 132 Fla. 1, 180 So. 347, 355 (1938) (italics and internal quotation marks omitted). The homeowner may expect a knock at the door from a seller of goods, a solicitor of charitable contributions, or a neighbor on a social call. The postal service will deliver the mail and a delivery truck may drop off a package.
On the other hand, there is no such thing as squatter’s rights on a front porch. A stranger may not plop down uninvited to spend the afternoon in the front porch rocking chair, or throw down a sleeping bag to spend the night, or lurk on the front porch, looking in the windows. The vendor who may hawk his goods during daylight hours is not welcome to knock at the door at two o'clock in the morning.
Turning to crime investigation, it is perfectly acceptable for a detective to come to the front door to speak with the owner. Where the officer has come to the front door to speak to the owner, there is no expectation of privacy regarding any incriminating objects the owner has left in plain view, or in any odors (such as marijuana) that may be emanating from the dwelling. The cases relied on by the majority opinion fall into this fact pattern. See State v. Morsman, 394 So.2d 408, 408-09 (Fla.1981) (permissible for officer to go to front door to investigate complaint); State v. Pereira, 967 So.2d 312, 314 (Fla. 3d DCA 2007) (officer walked from sidewalk to the home and smelled marijuana); State v. E.D.R., 959 So.2d 1225, 1226 (Fla. 5th DCA 2007) (officer walked up walkway to determine why several young men were asleep on front porch and observed crack cocaine on E.D.R.’s lap); Potts v. Johnson, 654 So.2d 596, 599 (Fla. 3d DCA 1995) (permissible for officer to go to front door to investigate theft); see also Ramize v. State, 954 So.2d 754 (Fla. 3d DCA 2007) (no facts given; cites Morsman and Potts).
But here, too, there are limits. A crime scene investigation unit cannot (absent consent or a warrant) cordon off the front porch and begin dusting the porch for *12 fingerprints, or conduct a microscopic examination for blood stains, or deploy a magnetometer or sonar to determine what lies beneath the porch.
In short, it is inaccurate to say that there is never any reasonable expectation of privacy with regard to the front porch of a house, although it is a more reduced expectation than applies to the house interior.
III.
A number of courts have considered the question how the Fourth Amendment applies in the context of a dog sniff at the door of a house or apartment. Three schools of thought have emerged: (1) A dog sniff of a dwelling is a search which can only be conducted pursuant to a warrant. United States v. Thomas, 757 F.2d 1359, 1366-67 (2d Cir.1985); Robb, 920 So.2d at 1186-87. (2) A dog sniff can only be conducted where there is a reasonable, articulable suspicion of drug activity inside the residence, but no warrant is required. State v. OHiz, 257 Neb. 784, 600 N.W.2d 805, 820 (1999).(3) A dog sniff is not a search and can be conducted without a warrant and without a reasonable suspicion. People v. Jones, 279 Mich.App. 86, 755 N.W.2d 224 (2008). See generally Brian L. Porto, Annotation, Use of Trained Dog to Detect Narcotics or Drugs as Unreasonable Search in Violation of Fourth Amendment, 150 A.L.R. Fed. 399 (1998); Lewis R. Katz & Aaron P. Golemboewski, Curbing the Dog: Extending the Protection of the Fourth Amendment to Police Drug Dogs, 85 Neb. L. Rev. 735 (2007); 1 Wayne R. LaFave, Search and Seizure, § 2.2(g) (4th ed. 2004).
Turning to the first alternative — a dog sniff at the front door is a search requiring a warrant — the Second Circuit has explained, “It is one thing to say that a sniff in an airport is not a search, but quite another to say that a sniff can never be a search. The question always to be asked is whether the use of a trained dog intrudes on a legitimate expectation of privacy.” Thomas, 757 F.2d at 1366 (citing Katz v. United, States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)). The courts “have recognized the heightened privacy interest that an individual has in his dwelling place.” Thomas, 757 F.2d at 1366; Kyllo, 533 U.S. at 34, 121 S.Ct. 2038. “Thus, a practice that is not intrusive in a public airport may be intrusive when employed at a person’s home.” Thomas, 757 F.2d at 1366. Because of the defendant’s “heightened expectation of privacy inside his dwelling, the canine sniff at his door constituted a search,” id. at 1367, for which a warrant was required. The Fourth District reached the same conclusion in Rabb, 920 So.2d at 1187.[9]
The second school of thought is that a dog sniff does not require a search warrant, but should instead be allowed on the showing of a reasonable suspicion. The Nebraska Supreme Court explained:
We agree with the courts which conclude an individual’s Fourth Amendment privacy interests may extend in a limited manner beyond the four walls of the home, depending on the facts, including *13 some expectation of privacy to be free from police canine sniffs for illegal drugs in the hallway outside an apartment or at the threshold of a residence, and that a canine sniff under these circumstances must be based on no less than reasonable, articulable suspicion.
Ortiz, 600 N.W.2d at 817 (Neb.1999).
The Court ruled:
We believe that there is a Fourth Amendment middle ground applicable to the investigations conducted by police handlers of narcotics detection dogs. On the one hand, much of the law enforcement utility of such dogs would be lost if full blown warrant procedures were required before a canine sniff could be used; but on the other, it is our view that a free society will not remain free if police may use this, or any other crime detection device, at random and without reason. Accordingly, we hold that a narcotics detection dog may be deployed to test for the presence of narcotics ... where:
(1) the police are able to articulate reasonable grounds for believing that drugs may be present in the place they seek to test; and
(2) the police are lawfully present in the place where the canine sniff is conducted.
Id. at 816 (quoting Commonwealth v. Johnston, 515 Pa. 454, 580 A.2d 74, 79 (1987)).
The third school of thought is that a dog sniff is not a search, and there is no reasonable expectation of privacy on a front porch, so that a dog sniff can be conducted at the front door, without a warrant and without having a reasonable suspicion. The majority opinion adopts that position.
A number of courts have expressed concern about the breadth of such a rule. The Fourth District expressed disapproval of the prospect that a drug-sniffing dog could be brought at random to the front door “of every house on a street hoping the dog sniffs drugs inside.” Rabb, 920 So.2d at 1190. The Nebraska Supreme Court and New York Court of Appeals likewise disapprove the prospect that such a rule would allow drug-sniffing dogs to be brought at random through the corridors of public housing projects. Ortiz, 600 N.W.2d at 816 (quoting People v. Dunn, 77 N.Y.2d 19, 563 N.Y.S.2d 388, 564 N.E.2d 1054, 1058 (1990)). Those jurisdictions conclude that a rule must be crafted which reasonably balances law enforcement and privacy interests.
In my view the balance is best struck by the second option: a drug-dog sniff is permissible only if there is a reasonable suspicion that drugs may be present in the place the police seek to test. As Professor LaFave points out, “with rare exception the [reported] cases have involved situations in which the [dog] alert occurred after a pre-existing reasonable suspicion.” 1 Wayne R. LaFave, supra, § 2.2(g), at 533-34 (footnotes omitted).
The State argues that the third option'— sniff anytime — is correct and is mandated by the United States Supreme Court’s decision in Caballes, 543 U.S. at 405, 125 S.Ct. 834, but that is not so. In Caballes, the defendant was stopped in a legal traffic stop. Although there was no reasonable suspicion of drug activity, the police brought a drug dog to the car, which alerted on the trunk. The Court upheld the search, saying, “A dog sniff conducted during a concededly lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate Fourth Amendment.” Id. at 410,125 S.Ct. 834. The State argues that this logic is equally applicable, and dispositive, of a dog *14 sniff at a front door. The State’s reliance on Caballes is misplaced.
In the first place, the Caballes Court was careful to tie its holding to the facts of the case: “the use of a well-trained narcotics-detection dog — one that ‘does not expose non-contraband items that otherwise would remain hidden from public view,’— during a lawful traffic stop, generally does not implicate legitimate privacy interests.” Id. at 409, 125 S.Ct. 834 (citation omitted); see also id. at 417, 125 S.Ct. 834 (Souter, J., dissenting) (“The Court today does not go so far as to say explicitly that sniff searches by dogs trained to scent contraband always get a free pass under the Fourth Amendment, since it reserves judgment on the constitutional significance of sniffs assumed to be more intrusive than a dog’s walk around a stopped car[.]”).
Second, the unusual procedural history of the Fourth District’s Rabb decision indicates that the Court has, for now, decided to leave the issue open. In 2004, the Fourth District issued its initial decision in State v. Rabb, 881 So.2d 587 (Fla. 4th DCA 2004), in which it held that a warrant is required for a dog sniff at the door of Rabb’s house. Id. at 595-96. On the State’s petition for writ of certiorari, the United States Supreme Court granted the petition, vacated the judgment, and remanded the matter to the Fourth District for further consideration in light of the Court’s 2005 decision in Caballes. Florida v. Rabb, 544 U.S. 1028, 125 S.Ct. 2246, 161 L.Ed.2d 1051 (2005). On remand, the Fourth District issued a new and more detailed opinion, again deciding that a warrant was necessary for a dog sniff at the front door of the house. Rabb, 920 So.2d at 1188-92. Review was denied by the Florida Supreme Court, State v. Rabb, 933 So.2d 522 (Fla.2006), and certiorari was denied by the United States Supreme Court in Florida v. Rabb, 549 U.S. 1052, 127 S.Ct. 665, 166 L.Ed.2d 513 (2006). While the denial of certiorari by the United States Supreme Court has no prece-dential effect, it certainly indicates that the Court has decided to leave this dog sniff question open for decision another day.
For the stated reasons, we should adopt the middle alternative, which is to allow a drug-dog sniff at a front door if there is a reasonable suspicion of drug activity. When this case was pending in the trial court, the debate was about whether the warrant requirement of Rabb should be followed, and there was no consideration of a reasonable suspicion standard. We should therefore remand the case to the trial court to consider whether there was a reasonable suspicion which supported the dog sniff in this case.
IV.
The majority opinion contains an alternative analysis for reversal which is based on the inevitable discovery rule of Nix v. Williams, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984), and Fitzpatrick v. State, 900 So.2d 495, 514 (Fla.2005). The majority opinion reasons that even if the dog sniff must be excluded from consideration, the detective came to the porch after the dog sniff and also smelled marijuana. The majority opinion concludes that the detective’s own “sniff’ is sufficient to supply probable cause for the issuance of the search warrant. I am unable to agree.
The problem here is that the dog handler went to the porch first, and informed the detective that the dog had a positive alert. It was with the knowledge of the positive alert that the detective then went to the front door and smelled marijuana. In light of this time sequence, the second identification is tainted by the first. That being so, I do not believe that we can reverse the trial court’s ruling on the basis of the inevitable discovery rule. I agree *15 with the Rabb decision on this point. 920 So.2d at 1191.
V.
Although we are reversing the trial court order, it bears mention that the trial court should not be faulted for its ruling. That is so because under Florida Supreme Court precedent, the trial court had no realistic alternative other than to follow the Fourth District’s decision in Rabb. The Florida Supreme Court has explained that when “the only case on point on a district [court of appeal] level is from a district other than the one in which the trial court is located, the trial court [is] required to follow that [other district’s] decision.” Pardo v. State, 596 So.2d 665, 666 (Fla.1992) (quoting State v. Hayes, 333 So.2d 51 (Fla. 4th DCA 1976)). The only decision squarely addressing a dog sniff at the front door of a private home was Rabb, and the trial court correctly concluded that the court was bound to follow it.
VI.
For the stated reasons, I agree that a search warrant was not required for a dog sniff at the door of a dwelling, and concur in reversing the order now before us. I concur in certifying direct conflict with the Fourth District’s decision in Rabb.
We should, however, adopt the rule that a reasonable suspicion is required before a drug-dog sniff is allowed at the front door of a dwelling. We should remand for a determination whether a reasonable suspicion existed.

. According to the detective, in a hydroponics lab for growing marijuana, high intensity light bulbs are used which create heat. This causes the air conditioning unit to run continuously without cycling off.

. Questions have been raised about the reliability of dog sniffs. Illinois v. Caballes, 543 U.S. 405, 417, 125 S.Ct 834, 160 L.Ed.2d 842 (Souter, J., dissenting); Lewis R. Katz and Aaron P. Godemboewski, supra, 85 Neb. L.Rev. at 752-65; 1 Wayne R. LaFave, supra, § 2.2(g), at 532-34.
Requiring either a warrant or reasonable suspicion addresses this concern by requiring articulable facts pointing to existence of drug activity within the dwelling. In the event of a positive alert by the dog, the affidavit in support of the search warrant for the search of the home will then include the articulable facts plus the sniff, not just the sniff alone.